[No. B230820. Second Dist., Div. Four. Apr. 18, 2012.]

JAMES M. DONOVAN, Plaintiff and Appellant, v.
DAN MURPHY FOUNDATION et al., Defendants and Respondents.

**Headnotes**

(1) **Pleading § 93—Anti-SLAPP Motions to Strike—Two-part Test.**—To
determine whether a cause of action should be stricken under the
anti-SLAPP statute, Code Civ. Proc., § 425.16, establishes a two-part
test. Under the first part, the party bringing the motion has the initial
burden of showing that the cause of action arises from an act in
furtherance of the right of free speech or petition—i.e., that it arises
from a protected activity. Once the defendant has met its burden, the
burden shifts to the plaintiff to demonstrate a probability of prevailing
on the cause of action. Only a cause of action that satisfies both parts of
the anti-SLAPP statute—i.e., that arises from protected speech or peti-
tioning and lacks even minimal merit—is a SLAPP, subject to being
stricken under the statute.

(2) **Pleading § 93—Anti-SLAPP Motions to Strike—Protected Rights—
Act in Furtherance.**—Code Civ. Proc., § 425.16, the anti-SLAPP stat-
ute, protects any act in furtherance of a person's right of petition or free
speech under the United States or California Constitution in connection
with a public issue (§ 425.16, subd. (e)). The mere act of voting is
insufficient to demonstrate that conduct challenged in a cause of action
arose from protected activity. Similarly, the fact that protected activity
may have triggered a cause of action does not necessarily mean the
cause of action arose from the protected activity.

(3) **Pleading § 93—Anti-SLAPP Motions to Strike—Protected Rights—
Act in Furtherance—Nonprofit Charitable Organization—Director—
Removal.**—An anti-SLAPP motion should not have been granted in a
wrongful removal action by a former director of a nonprofit charitable
organization. The gravamen of the complaint was that the removal was
illegal and done in retaliation for plaintiff's efforts seeking compliance
with California corporate and trust laws. The conduct complained of did
not implicate an act in furtherance of a person's right to free speech or
petition under Code Civ. Proc., § 425.16.

[1 Kiesel et al., Matthew Bender Practice Guide: Cal. Pretrial Civil
Procedure (2012) § 13.06; 5 Witkin, Cal. Procedure (5th ed. 2008)
Pleading, §§ 1019, 1028.]

(4) **Pleading § 93—Anti-SLAPP Motions to Strike—Protected Rights—
Act in Furtherance—Nonprofit Charitable Organization—Boards.**—
The board of an organization may have a statutory right to remove a
director, but the exercise of that right is not necessarily an exercise of a
free speech or petitioning right for purposes of Code Civ. Proc.,

§ 425.16. A board of directors meeting held by a nonprofit charitable organization is not an "official proceeding authorized under law" for the purposes of § 425.16, subd. (e)(2). Nor does the fact that a private charitable organization's grants may affect large numbers of people transform every dispute among its board members into a matter of public interest.

## COUNSEL

Law Offices of James M. Donovan, Michael J. Glenn; Horvitz & Levy and Jeremy B. Rosen for Plaintiff and Appellant.

Waxler, Carner, Brodsky, Andrew J. Waxler and Chrisopher L. Wong for Defendants and Respondents.

## OPINION

**MANELLA, J.—**

### INTRODUCTION

James M. Donovan appeals from an order of the superior court granting respondents' special motion to strike his complaint under Code of Civil Procedure section 425.16 (the anti-SLAPP statute).[1] He contends the trial court erred in granting the motion because (1) respondents' conduct does not fall within the scope of the anti-SLAPP statute and (2) his complaint had merit. Because we conclude that the conduct giving rise to the complaint falls outside the purview of the anti-SLAPP statute, we reverse.

### FACTUAL AND PROCEDURAL HISTORY

On August 30, 2010, Donovan filed a complaint for declaratory relief and wrongful removal against respondents Dan Murphy Foundation (Foundation), and its current directors, Edward Landry, Richard A. Grant, Jr., Maria O. Grant, Monsignor Jeremiah Murphy, Julia Donohue Schwartz, Frederick Roupp, and Jon Rewinski.[2] In his complaint, Donovan alleged he was wrongfully removed as a director of the Foundation after he raised concerns

---

[1]  ˙ ll further statutory citations are to the Code of Civil Procedure, unless otherwise ed.

    ipp and Rewinski were elected as directors after Donovan was removed from the board
    'ors of the Foundation (Board).

## COUNSEL

Law Offices of James M. Donovan, Michael J. Glenn; Horvitz & Levy and Jeremy B. Rosen for Plaintiff and Appellant.

Waxler, Carner, Brodsky, Andrew J. Waxler and Chrisopher L. Wong for Defendants and Respondents.

## OPINION

## MANELLA, J.—

### INTRODUCTION

James M. Donovan appeals from an order of the superior court granting respondents' special motion to strike his complaint under Code of Civil Procedure section 425.16 (the anti-SLAPP statute).[1] He contends the trial court erred in granting the motion because (1) respondents' conduct does not fall within the scope of the anti-SLAPP statute and (2) his complaint had merit. Because we conclude that the conduct giving rise to the complaint falls outside the purview of the anti-SLAPP statute, we reverse.

### FACTUAL AND PROCEDURAL HISTORY

On August 30, 2010, Donovan filed a complaint for declaratory relief and wrongful removal against respondents Dan Murphy Foundation (Foundation), and its current directors, Edward Landry, Richard A. Grant, Jr., Maria O. Grant, Monsignor Jeremiah Murphy, Julia Donohue Schwartz, Frederick Roupp, and Jon Rewinski.[2] In his complaint, Donovan alleged he was wrongfully removed as a director of the Foundation after he raised concerns

---

[1] All further statutory citations are to the Code of Civil Procedure, unless otherwise indicated.

[2] Roupp and Rewinski were elected as directors after Donovan was removed from the board of directors of the Foundation (Board).

about the Foundation's financial oversight and governance. Donovan sought a declaration that his removal from the Board was illegal. He requested that the court issue an order enjoining respondents from removing him as a director without proper cause, that an independent counsel be appointed on "such additional terms and conditions as the Court deems necessary," that a monitor be appointed to review and oversee the activities of the Foundation and the Board, and that he be awarded compensatory damages and costs.

According to the complaint, Donovan first began expressing his concerns in 2008, after the Foundation's assets had dropped approximately $65 million in value from the previous valuation of $250 million. Donovan's concerns were shared by two of the seven directors at that time, Julia Schwartz and Rosemary E. Donohue, but were rejected by three other directors, Edward Landry, Richard Grant, and Maria Grant.

The complaint detailed Donovan's disputes with his fellow directors. First, during a proposed transfer of management of the Foundation's assets, Donovan sought a review of the transfer by the full Board. Landry and Richard Grant opposed Donovan's request, and the management of the Foundation's assets was transferred without a review by the Board. Second, Donovan "demanded" that the Board exercise its responsibilities under the Probate Code to oversee the management of the Foundation's assets. Although not stated in the complaint, it can be inferred that the full Board did not agree with his demands. Third, Donovan requested information and documentation regarding the Foundation's investments, but Landry and Richard Grant did not provide Donovan with the requested information, "except for the delivery of unresponsive, meaningless, and disorganized raw account data." Fourth, Donovan advised Richard Grant, Maria Grant and Landry that the Board was composed of more than half of "interested persons," in violation of Corporations Code section 5227, but the three directors "flatly denied that the Foundation was not in compliance." Later, the three directors informed Donovan that they had terminated the compensation of Daniel J. Donohue, a director and the president of the Foundation, which meant that Mr. Donohue and his sister, Rosemary Donohue, were no longer "interested." Fifth, Donovan raised questions about the compensation of Mr. Donohue, of Richard Grant, who was the Foundation's secretary, treasurer, and chief financial officer, and of Landry, who was legal counsel for the Foundation. He contended their compensation was not approved by the Board, as required by law. The Grants and Landry "actively opposed" Donovan's efforts. Sixth, Donovan sought to remove Mr. Donohue as a director after Mr. Donohue was allegedly declared "incapable" of managing his property unassisted due to cerebral atrophy dementia. After objections by the Grants and Landry, Donovan advised them that if an agreement could not be reached with regard to a new Board member, he

would go to court and apply for an appointment of a provisional director. Subsequently, Mr. Donohue was replaced by Monsignor Murphy. Seventh, Donovan objected to three loans by the Foundation to the Los Angeles Opera, which were proposed by Landry, who was also a director with the Los Angeles Opera, unless the loans were secured. The Foundation provided the loans to the Los Angeles Opera, but Donovan alleged Landry failed to secure the Foundation its second lien position on these loans. Eighth, Donovan alleged that at a meeting that included the Grants and himself, Landry stated that there were numerous internal problems and liabilities at the Foundation that were of concern to him, and that it would be best for everyone involved if these matters were kept quiet and away from public scrutiny. Donovan requested that Landry disclose the details to the full Board, but the other three directors "refused to provide any information or documents" about these internal problems and liabilities. Finally, after Monsignor Murphy became a Board member, the Board agreed on an independent investigation into the matters raised by Donovan. The next month, however, Monsignor Murphy and Maria Grant told Donovan that there would be no independent investigation. Instead, an attorney from Loeb & Loeb would be retained to investigate the issues raised by Donovan.

On December 2, 2009, allegedly without prior notice to Donovan, Monsignor Murphy, the Grants and Landry voted to remove Donovan as a director. The remaining directors, Rosemary Donohue and Julia Schwartz, along with Donovan, objected and voted against the removal.

Respondents filed an answer to the complaint, generally denying the allegations. On the same day, respondents also filed a special motion to strike the complaint under the anti-SLAPP statute. In the special motion to strike, respondents contended that both causes of action in the complaint arose from protected activity because "[t]he acts complained of were in furtherance of [the] exercise of their rights of free speech in connection with a public issue or an issue of public interest under section 425.16(e)(4)." Respondents contended that the vote to remove Donovan as a director was an exercise of free speech, that the vote was in connection with a matter of public interest because (1) the Foundation is in the public eye, (2) it is supervised by the Attorney General, and (3) its assets are held for the benefit of the public. In a footnote, respondents also asserted that their conduct fell within the scope of section 425.16, subdivision (e)(2), as "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Respondents further asserted that board of directors meetings and voting by directors were authorized under the Corporations Code.

Respondents also contended that the causes of action in Donovan's complaint lacked minimal merit because, among other reasons, the Board had legal authority to remove a director at any time with or without cause, upon a vote by the majority of the Board. Respondents also noted that Donovan's causes of action were moot because his term as a director had expired.

Donovan opposed the special motion to strike, contending that the gravamen of his complaint did not involve protected free speech or petitioning activity by the Foundation or the Board. He contended he was suing for "wrongful termination," and that "[a] termination does not become an act of free speech simply because a vote is involved. The termination does not involve petitioning activity because an entity subject to state regulation is involved." He also contended that "nowhere in Defendants' motion is there any reference to any statement made by any Defendant, or any written or oral communication[] by a Defendant which forms the basis of any liability sought to be imposed by Plaintiff." He also asserted that his causes of action had merit because the Foundation did not have an unconditional right to terminate any of its members at any time, under any circumstance. In support of this contention, Donovan cited only wrongful termination cases involving employers and their employees.

On December 17, 2010, after a hearing, the superior court granted the special motion to strike the complaint. The court concluded that respondents had shown their conduct fell within the purview of the anti-SLAPP statute, and that Donovan had failed to demonstrate *his complaint had minimal merit.* Appellant filed a timely notice of appeal from the order.

## DISCUSSION

To determine whether a cause of action should be stricken under the anti-SLAPP statute, section 425.16 establishes a two-part test. Under the first part, the party bringing the motion has the initial burden of showing that the cause of action arises from an act in furtherance of the right of free speech or petition—i.e., that it arises from a protected activity. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 [12 Cal.Rptr.3d 54, 87 P.3d 802].) Once the defendant has met its burden, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the cause of action. (*Ibid.*) Only a cause of action that satisfies both parts of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

An appellate court independently reviews the trial court's order granting a special motion to strike under section 425.16. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055 [39 Cal.Rptr.3d 516, 128 P.3d 713].) In our evaluation of the trial court's order, we consider the pleadings and the supporting and opposing affidavits filed by the parties on the anti-SLAPP motion. In doing so, we do not weigh credibility or determine the weight of the evidence. Rather, we accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 [46 Cal.Rptr.3d 606, 139 P.3d 2].)

Here, the superior court determined that the causes of action should be stricken because they arose from protected activity and lacked minimal merit. Regardless of the validity of appellant's claims, we conclude the superior court's order must be reversed, because the conduct giving rise to the causes of action does not fall within the scope of the anti-SLAPP statute.

██ Section 425.16 protects any " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " (§ 425.16, subd. (e).) ██ The two causes of action in appellant's complaint arose out of the same conduct by respondents—a series of disagreements and disputes among the directors about corporate governance and financial oversight that culminated in appellant's removal from the Board. The gravamen of appellant's complaint is that his removal as a director was illegal and in retaliation for his efforts seeking Foundation and Board compliance with California corporate and trust laws. As explained below, the conduct complained of does not implicate an act in furtherance of a person's right to free speech or petition.

██ Respondents contend the complaint implicates such constitutional rights because the removal of Donovan as a director was done through a majority vote, and voting is an act in furtherance of the directors' rights of free speech. (See *Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 183, fn. 3 [118 Cal.Rptr.2d 330] [noting in footnote that a vote on a disputed program by council members is "conduct qualifying for the protections afforded by the First Amendment"].) The mere act of voting, however, is insufficient to demonstrate that conduct challenged in a cause of action arose from protected activity. (See *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 354 [22 Cal.Rptr.3d 724] [litigation challenging public entity's action in passing a measure, after a public hearing and a majority vote of its constituent members, not subject to anti-SLAPP statute where the measure itself was not

an exercise of free speech or petition].) Similarly, the fact that protected activity may have triggered a cause of action does not necessarily mean the cause of action arose from the protected activity. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76–77 [124 Cal.Rptr.2d 519, 52 P.3d 695]; see, e.g., *McConnell v. Innovative Artists Talent & Literary Agency, Inc.* (2009) 175 Cal.App.4th 169, 176–177 [96 Cal.Rptr.3d 1] [conduct underlying plaintiff's claims of retaliation and wrongful termination was that of preventing plaintiff from working by imposing restrictive work conditions, not a prelitigation letter written by employer's attorney imposing conditions]; *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1318 [135 Cal.Rptr.2d 903] [defendants were not sued for their conduct in exercising their constitutional rights, but to compel their compliance with the provisions of the rent control law]; *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207 [104 Cal.Rptr.3d 692] [conduct challenged in action alleging city failed to comply with competitive bidding requirement was not officials' communications or deliberations; but their failure to obey state and local laws].) Here, respondents have not demonstrated that removing a director over a dispute about financial oversight and corporate governance is an exercise of a free speech or petitioning right. A board may have a statutory right to remove a director, but the exercise of that right is not necessarily an exercise of a free speech or petitioning right.[3]

In any event, respondents have not demonstrated that the majority vote to remove Donovan as a director was an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " (§ 425.16, subd. (e).) The anti-SLAPP statute defines such acts as including: "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . or (4) any other conduct in furtherance of the exercise

---

[3] *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468 [102 Cal.Rptr.2d 205] (*Damon*), cited by respondents in support of their contention that their disagreements with Donovan and their vote to remove him were protected activity, is distinguishable. In *Damon*, the court concluded that statements during a board meeting by two members of a board of directors of a homeowners association disagreeing with the plaintiff's management of the association, were protected under the anti-SLAPP statute because, among other reasons, the statements were made in a " 'public forum.' " (*Id.* at pp. 471–473.) In reaching this determination, the court found that (1) the board meetings were televised and open to the public and (2) a homeowners association is in effect " 'a quasi-government entity paralleling in almost every case the powers, duties, and responsibilities of a municipal government.' " (*Id.* at p. 475, quoting *Cohen v. Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642, 651 [191 Cal.Rptr. 209].) Here, there is no suggestion the Board's meetings were broadcast or open to the public. More important, a nonprofit charitable organization, such as the Foundation, is not a quasi-governmental entity.

of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Ibid.*)

Respondents contend their conduct falls within section 425.16, subdivision (e)(2) as a "written or oral statement or writing made in connection with an issue under consideration or review by . . . any other official proceeding authorized by law." They note that board of directors meetings and majority voting are authorized under the Corporations Code, and the issue whether to retain Donovan was an issue of consideration before the Board. Respondents have not shown, however, that appellant's complaint challenges any statement or writing by a director. More importantly, a board of directors meeting by a nonprofit charitable organization is not an "official proceeding authorized by law" for the purposes of section 425.16, subdivision (e)(2).

In *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192 [46 Cal.Rptr.3d 41, 138 P.3d 193] (*Kibler*), the Supreme Court held that a hospital's peer review process qualified as an " 'official proceeding authorized by law' " for the purposes of section 425.16, subdivision (e)(2), because the peer review process is required under the Business and Professions Code and is subject to judicial review by administrative mandamus. (*Kibler*, at pp. 198–200.) In contrast, respondents have not suggested that a vote to remove a director is subject to judicial review. In *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387 [53 Cal.Rptr.3d 647], the appellate court concluded that a proceeding established by the Regents of the University of California, a constitutional entity with quasi-judicial powers, was an official proceeding authorized by law. (*Id.* at p. 1396.) Respondents cannot claim that the Foundation is a similar governmental entity. Rather, a nonprofit charitable organization's board of directors meeting is akin to a private company's sexual harassment grievance protocol, which has been held not to be an official proceeding authorized under law. (*Olaes v. Nationwide Mutual Ins. Co.* (2006) 135 Cal.App.4th 1501, 1508 [38 Cal.Rptr.3d 467].) Both the board of directors meeting and the sexual harassment protocol are authorized by statutes, but the actual procedures are left to the private organizations.

Similarly, the majority vote to remove Donovan was not "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) Even were we to assume that any act of voting is an exercise of the constitutional right of free speech, respondents have not shown that the vote to remove Donovan was "in connection with a public issue or an issue of public interest." Respondents presented no evidence of widespread public interest in the financial oversight

or governance of the Foundation. They submitted no news articles indicating that the public was interested in these issues, or even in the dispute among directors of the Foundation. Rather, respondents rely solely on the fact that the Foundation is one of the largest charitable organizations in Southern California, subject to public oversight by the Attorney General, and that it donates a substantial amount of money every year to persons and entities that affect millions of Southern Californians. None of these facts, standing alone or taken together, would transform a private disagreement among directors of the Foundation into a public issue or an issue of public interest. California courts have found that private disputes between a small number of employees and a large, well-known employer do not involve a public issue or issue of public interest. (See, e.g., *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 919, 926 [130 Cal.Rptr.2d 81] (*Rivero*) [employment dispute between local union members and the University of California, Berkeley, did not involve a public issue, although the university employed at least 17,000 public employees].) Nor does the fact that the Foundation's grants may affect large numbers of people transform every dispute among its board members into a matter of public interest. Were the law otherwise, every act of the governing body of a large organization would constitute a matter of public interest. Thus, we conclude that the vote to remove Donovan was not in connection with a public issue or a matter of public interest.[4]

---

[4] The cases cited by respondents, in support of their contention that the size and significance of the Foundation render private disagreements by the directors a matter of public interest, are readily distinguishable. In *Nygård, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027 [72 Cal.Rptr.3d 210], this court concluded that an "issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest." (*Id.* at p. 1042.) The corollary, however, is not necessarily true—the fact that an entity's conduct may have significance does not render all of its actions protected under the anti-SLAPP statute. The conduct must be in connection with an issue of public interest. (See *Tamkin v. CBS Broadcasting, Inc.* (2011) 193 Cal.App.4th 133, 144 [122 Cal.Rptr.3d 264] [large media defendants not protected by anti-SLAPP statute in all defamation and privacy cases; defendants must show that the challenged conduct was in connection with an issue of public interest].) In addition, as discussed previously, respondents have not demonstrated that there was widespread public interest in the disagreements among the directors.

*Cabrera v. Alam* (2011) 197 Cal.App.4th 1077 [129 Cal.Rptr.3d 74], is distinguishable because it involved statements made during a board meeting prior to the election for directors of a homeowners association. (*Id.* at pp. 1087–1088.) Conduct involving homeowners associations generally involves a matter of public interest because a homeowners association is akin to a governmental entity. "The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community *in a manner similar to that of a governmental entity*." (*Damon, supra*, 85 Cal.App.4th at p. 479, italics added; accord, *Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 737 [87 Cal.Rptr.3d 347] [same].) There is no evidence that the Foundation affects a community in a manner similar to that of a governmental entity.

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777 [54 Cal.Rptr.2d 830] (*Dove Audio*), is the case most favorable to respondents' argument. In that case, a law

Because the gravamen of appellant's complaint did not implicate protected activity, the trial court's order granting respondents' special motion to strike the complaint under section 425.16 must be reversed. We do not suggest that appellant's causes of action are viable, let alone meritorious. Nor do we find the motion to strike was frivolous. We conclude only that the court erred in granting the special motion to strike. Respondents were and remain free to challenge appellant's complaint on grounds other than those set forth in section 425.16.

---

firm had sent a letter soliciting celebrities to support an effort to file a complaint against the defendant, a publishing firm, for the defendant's alleged failure to pay royalties on audio recordings by prominent celebrities, such as Audrey Hepburn, to charities designated by those celebrities. (*Id.* at p. 780.) This court concluded that the statements were made in connection with an official proceeding authorized by law, which placed the statements within the scope of the anti-SLAPP statute pursuant to section 425.16, subdivision (e)(2). (*Dove Audio*, at p. 784.) Section 425.16, subdivision (e)(2) does not require that the matter involve an issue of public interest. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117–1118 [81 Cal.Rptr.2d 471, 969 P.2d 564].) Thus, our determination that the statements in the letter also concerned an issue of public interest because the statements concerned "whether money designated for charities was being received by those charities" is dicta. (*Dove Audio, supra,* 47 Cal.App.4th at p. 784.) In any event, the statements fell within the scope of the anti-SLAPP statute because they concerned nationally known figures, such as Audrey Hepburn. (*Rivero, supra,* 105 Cal.App.4th at p. 924.) There is no evidence in the record that the Foundation is a similarly well-known entity.

Likewise, *Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036 [61 Cal.Rptr.2d 58] (*Braun*) is distinguishable because in that case the court determined that statements in five newspaper articles fell within the scope of the anti-SLAPP statute under section 425.16, subdivision (e)(2). (*Braun, supra,* at p. 1043.) The articles were about the State Auditor's probe of alleged illegal and improper management of a program affiliated with the medical school of the University of California, San Francisco, after an employee sent a whistleblower letter. (*Id.* at pp. 1040–1041.) The court never discussed section 425.16, subdivision (e)(4), which requires that the matter concern a public issue or an issue of public interest. In addition, the court's observation, in a footnote, that the program's "financial well-being and integrity were legitimate matters of public concern, especially when called into question by the people most closely affected—its employees" (*Braun,* at p. 1047, fn. 5) did not constitute a holding that the financial well-being and integrity of a program affiliated with a prominent entity was necessarily an issue of public interest. Indeed, the court discussed "public concern" in the context of the whistleblower law and statutes granting the State Auditor investigative authority. (*Ibid.*)

Similarly, *Fontani v. Wells Fargo Investments, LLC* (2005) 129 Cal.App.4th 719 [28 Cal.Rptr.3d 833] (*Fontani*), disapproved on other grounds in *Kibler, supra,* 39 Cal.4th at page 203, footnote 5, is distinguishable because in that case the court determined that statements made in a filing by the defendant with a regulatory entity that exercises governmental authority fell within the scope of the anti-SLAPP statute under section 425.16, subdivision (e)(2). (*Fontani, supra,* 129 Cal.App.4th at p. 728.) The court also determined that the statements involved a matter of widespread public interest because the statements could impact persons who were not the customers of, or investors in, the defendant company. (*Id.* at pp. 732–733.) Here, there is no evidence in the record that the disagreements among the directors or the removal of Donovan as a director could impact persons or entities beyond the directors involved or the beneficiaries of the Foundation.

## DISPOSITION

The order granting the special motion to strike under section 425.16 is reversed. Appellant is awarded costs on appeal.

Epstein, P. J., and Suzukawa, J., concurred.