Filed 5/9/13  Singh v. L.A. Checker Cab Coop. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| AVTAR SINGH, et al., | B239532 |
| Plaintiffs and Respondents, | |
| v. | (Los Angeles County Super. Ct. No. BC468948) |
| L.A. CHECKER CAB COOPERATIVE, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gregory W. Alarcon, Judge.  Reversed.

Neil C. Evans for Defendants and Appellants.

Kimberly D. Jaimez for Plaintiffs and Respondents.

_____

## INTRODUCTION

Minority shareholders of a cooperative filed a complaint against the cooperative, claiming its voting procedures violated the Corporations Code. The cooperative responded by filing a special motion to strike under Code of Civil Procedure section 425.16. The trial court denied the motion. The cooperative appeals from the order of denial, contending the trial court erred in concluding the challenged conduct did not arise from protected activity. We reverse.

## FACTUAL AND PROCEDURAL SUMMARY

In September 2011, Avtar Singh and Mikhail Gershman filed a verified complaint against LA Checker Cab Cooperative, Inc. (Checker Cab), Yuriy Bartel, Arsen Derderian, Igor Shteynberg, Mikail Shef, Mikail Sher, Suren Gevorkian, Boris Rozman, Roman Petrossian, Marat Khavkin and Robert Moussalian, seeking to (1) declare invalid under Corporations Code section 12480 the December 2010 Checker Cab Board of Directors election; (2) to order a new election of the Board of Directors as provided in Corporations Code section 12485; (3) to prohibit further use of illegal bylaws and (4) to award payment of legal fees and costs.[1] According to the allegations of the complaint, in conducting its most recent election of its board of directors, Checker Cab did not comply with Corporations Code section 12480 which applies to cooperatives exclusively and mandates "each member entitled to vote shall be entitled to one vote on each matter submitted to a vote of the members." Instead, Singh alleged, Checker Cab administered proportional voting based on each member's number of shares, and shares equated to cabs owned. Consequently, Checker Cab members with more cabs -- and therefore more shares--had stronger voting power during the last election of its board of directors than

---

[1]     We include Gershman in our further references to Singh unless otherwise indicated; we include all defendants in our references to Checker Cab unless otherwise indicated.

members with fewer cabs, in contravention of the egalitarian "one-member, one-vote" directive of the Corporations Code.

According to Singh's complaint, Checker Cab became a cooperative in December 2001, and according to its Articles of Incorporation, "The voting power and proprietary interest of the members/shareholders of this corporation are equal." Under its Bylaws, however, "Voting Rights," are "One Vote Per Share," with "shares []corresponding to a maximum of 290 vehicles to be operated by [Checker Cab]," such that a member "may own one *or more* shares." (Italics added.) Currently, Checker Cab has 290 taxis on the road, and its 130 members each own one or more of these taxis. Therefore, the voting procedure governing Checker Cab elections since 2001 to and including the most recent election is in clear violation of Corporations Code section 12480.

At the time of the December 2010 election and at present, Singh held three Checker Cabs shares/taxis and Gershman held one share/taxi. Together these shares comprised roughly 1.4 percent of the issued shares/taxis of Checker Cab. Notwithstanding their objection to the procedures, Singh and Gershman voted at the December 2010 election. Bertel, Derderian, Shteynberg, Shef, Sher, Gevorkian, Rozman, Petrossian, Khavkin, Moussalian and Gershman were elected to the board. Singh and Gershman believe the outcome would have been different had individual votes been counted per member, rather than per share. The pool of candidates would have been larger because more members would have run for election if proper egalitarian voting had been in place. At the very least, Singh would have run for the board, but he knew certain large shareholders would block his election due to his history of advocating for egalitarian voting. Prior to and following the December 2010 election, Singh and Gershman attempted to persuade Checker Cab to amend its voting procedure so it would comply with the Corporations Code and its own Articles of Incorporation without success.

3

Before filing their complaint, Singh and Gershman sought to remedy the illegal voting process—first, by communication with Checker Cab management and second, by exhausting administrative remedies by reporting Checker Cab to the appropriate regulatory authorities. In early November 2010, with the assistance of the Legal Aid Foundation of Los Angeles, Singh and Gershman formally notified Checker Cab's board of the requirement that cooperatives conduct elections on a one-member, one-vote basis, but Checker Cab indicated the December 2010 election would be held as before, in accord with the "One Vote Per Share" procedure. Singh and Gershman then wrote letters to the California Attorney General and Department of Transportation for the City of Los Angeles, but the Attorney General suggested Singh and Gershman contact a private attorney, and the City indicated it could not take action until Singh and Gershman obtained a superior court ruling declaring Checker Cab's voting process violates California law. Singh and Gershman alleged Legal Aid counsel spent more than 150 hours and accrued substantial legal fees; in June 2011, Singh and Gershman retained pro bono counsel to pursue their action.

In response, Checker Cab filed a special motion to strike the complaint in this case (Code Civ. Proc., §425.16 [all undesignated statutory references are to the Code of Civil Procedure]), arguing Singh's conduct created "public interest" by involving two governmental agencies prior to the election, and Singh could not prevail as both he and Gershman had voted in the election they challenged as illegal and Gershman was elected to the board; therefore, Checker Cab asserted, Singh and Gershman had unclean hands or were in pari delicto with the defendants so they could not obtain the equitable relief they sought.[2]

---

2    Checker Cab also claimed entitlement to $29,790 for attorney's fees (59 hours at $450 per hour, without including research and preparation of the anticipated reply) and costs.

4

In support of its motion, Checker Cab submitted the declaration of its corporate president (Yevgeny Smolyar) who said he had attended the public meeting and election of December 8, 2010, and, at that time, all candidates for the Board (including Singh and Gershman) spoke in support of their respective candidacies. Smolyar said he witnessed their receipt of their ballots and voting of those ballots. Because Singh owned five Checker Cab taxis, Smolyar stated, Singh was entitled to and did vote five ballots. He further stated Checker Cab is a taxi company with a government issued franchise, issued by the City of Los Angeles. Pursuant to this franchise, the shareholders of Checker Cab operate almost 300 taxis providing transportation services to the citizens of and visitors to the City of Los Angeles. These taxis are driven by more than 500 drivers and provide rides to as many as 1 million passengers annually.

Singh filed opposition, arguing section 425.16 does not apply in this case, and Checker Cab could not show a probability of prevailing as its voting procedures violated the Corporations Code. Checker Cab objected to Singh's opposition as untimely but also filed a reply with objections to Singh's evidence.

After hearing argument and taking the matter under submission, the trial court denied Checker Cab's motion.

Checker Cab appeals.

### DISCUSSION

**Section 425.16 Special Motions to Strike and the Nature of a SLAPP Suit[3]**

"In enacting section 425.16, the Legislature intended a remedy for the 'disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' (§ 425.16, subd. (a).) To that end, the anti-SLAPP statute provides a mechanism for quickly identifying and eliminating civil actions filed for the purpose of chilling the exercise of free speech.

---

[3] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn. 1.)

5

Under section 425.16, subdivision (b)(1), '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.'" (*City of Riverside v. Stansbury* (2007) 155 Cal.App.4th 1582, 1588.)

"Under the statute, an '"act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' (§ 425.16, subd. (e).)

"In interpreting section 425.16, courts have described the nature of SLAPP suits. '"SLAPP plaintiffs do not intend to win their suits; rather, they are filed solely for delay and distraction [citation], and to punish activists by imposing litigation costs on them for exercising their constitutional right to speak and petition the government for redress of grievances. [Citation.] [Citation.] SLAPP suits are filed to prevent citizens from exercising their political rights, and to harm those who have exercised those rights. [Citation.] "SLAPP suits are brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. [Citations.]" [Citation.] "As long as the defendant is forced to devote its time, energy and financial resources to combating the lawsuit its ability to combat the plaintiff in the political arena is substantially diminished. [Citations.]" [Citation.]' (*Paul for Council v. Hanyecz*

6

(2001) 85 Cal.App.4th 1356, 1363-1364 [102 Cal. Rptr. 2d 864][, disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5].)

"'The SLAPP strategy also works even if the matter is already in litigation because the defendant/cross-complainant hopes to drive up the cost of litigation to the point where the plaintiff/cross-defendant will abandon its case or have less resources available to prosecute its action against the defendant/cross-complainant and to deter future litigation.' (*Wilcox v. Superior Court*[ (1994)] 27 Cal.App.4th [809,] 816[, disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 68, fn. 5]; see § 425.16, subd. (h) [making cross-complaints subject to the anti-SLAPP statute].)

"SLAPP suits therefore '"masquerade as ordinary lawsuits"' but 'are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so.' (*Wilcox v. Superior Court, supra*, 27 Cal.App.4th at p. 816.) 'The favored causes of action in SLAPP suits are defamation, various business torts such as interference with prospective economic advantage, nuisance and intentional infliction of emotional distress.' (*Ibid*.)

"To combat these suits, section 425.16 permits a special motion to strike, thereby 'provid[ing] an efficient means of dispatching, early on in a lawsuit, a plaintiff's meritless claims, and thus encourages, to use the Legislature's words, "continued participation in matters of public significance." (§ 425.16, subd. (a).)' (*Paul for Council v. Hanyecz, supra*, 85 Cal.App.4th at p. 1364.)" (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 926-928 (*Kajima*).)

**Burdens of Proof and Standard of Review**

"'[S]ection 425.16, subdivision (b)(1), requires that a court engage in a two-step process when determining whether a defendant's section 425.16 motion to strike should be granted. First, the court decides whether the defendant has made a threshold prima facie showing that the defendant's acts, of which the plaintiff complains, were ones taken *in furtherance of the defendant's constitutional rights of petition or free speech in*

7

*connection with a public issue.* [Citation.] If the court finds that such a showing has been made, then the plaintiff will be required to demonstrate that "there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); [citation].) The defendant has the burden on the first issue, the threshold issue; the plaintiff has the burden on the second issue. [Citation.]' (*Paul for Council v. Hanyecz, supra*, 85 Cal.App.4th at p. 1364, fn. omitted[, disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.*.) The court can strike a single cause of action, while allowing other causes of action to remain. (*Shekhter v. Financial Indemnity Co.* (2001) 89 Cal.App.4th 141, 150 [106 Cal.Rptr.2d 843].)

"'In terms of the so-called threshold issue, the moving defendant's burden is to show the challenged cause of action "arises" from protected activity. [Citations.] Once [but only if] it is demonstrated the cause of action arises from the exercise of the defendant's free expression or petition rights, then the burden shifts to the plaintiff to show a probability of prevailing in the litigation.' (*Shekhter v. Financial Indemnity Co., supra*, 89 Cal.App.4th at p. 151; see also *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 307 [106 Cal.Rptr. 2d 906] ['to invoke the protection of the SLAPP statute [defendant must show] the challenged lawsuit arose from an act on the part of the defendant in furtherance of her right of petition or free speech' (italics added)]; *Paul for Council v. Hanyecz, supra*, 85 Cal.App.4th at p. 1365 ['defendant must present a prima facie showing that the plaintiff's causes of action arise from acts of the defendant taken to further the defendant's rights of free speech or petition in connection with a public issue' (italics added)].)

"'The phrase "arising from" in section 425.16, subdivision (b)(1) has been interpreted to mean that "the act underlying the plaintiff's cause" or "the act which forms the basis for the plaintiff's cause of action" must have been an act in furtherance of the right of petition or free speech.' (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1001 [113 Cal.Rptr.2d 625]; see also *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 565 [92 Cal.Rptr.2d 755] [courts

8

consider 'whether the complaint alleges acts in furtherance of defendant's right of petition or free speech in connection with a public issue'].)

"We review the trial court's rulings on a SLAPP motion independently under a de novo standard of review. (*ComputerXpress, Inc. v. Jackson, supra*, 93 Cal.App.4th at p. 999.)" (*Kajima, supra,* 95 Cal.App.4th at pp. 928-929, italics added.) "In determining whether the anti-SLAPP statute applies in a given situation, we must remember that 'the mere fact an action was filed after protected activity took place does not mean it arose from that activity.'" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.)

**Checker Cab Met Its Threshold Burden to Show the Conduct Alleged in Singh's Complaint Was in Furtherance of Checker Cab's Right of Petition or Free Speech in Connection with a Public Issue.**

As Checker Cab notes, in addressing the first prong of the statute, the "focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92, original italics.) Because Singh's complaint does not challenge oral or written communications by Checker Cab, but rather its conduct in implementing voting procedures and electing its board of directors in a manner Singh argues is in contravention of section 12480 of the Corporations Code, Checker Cab necessarily relies on subdivision (e)(4) of section 425.16, which protects "any other *conduct* in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Italics added.)

Citing *Donovan v. Dan Murphy Foundation* (2012) 204 Cal.App.4th 1500 (*Donovan*), Singh says Checker Cab's conduct does not constitute protected activity within the meaning of section 425.16. In particular, Singh emphasizes the following text from *Donovan*: "The mere act of voting . . . is insufficient to demonstrate that conduct challenged in a cause of action arose from protected activity. (See *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004)

9

125 Cal.App.4th 343, 354 [22 Cal.Rptr.3d 724] [litigation challenging public entity's action in passing a measure, after a public hearing and a majority vote of its constituent members, not subject to anti-SLAPP statute where the measure itself was not an exercise of free speech or petition].) Similarly, the fact that protected activity may have triggered a cause of action does not necessarily mean the cause of action arose from the protected activity. (*City of Cotati v. Cashman*[, *supra*, 29 Cal.4th at pp.] 76–77 [124 Cal. Rptr. 2d 519, 52 P.3d 695]; see, e.g., *McConnell v. Innovative Artists Talent & Literary Agency, Inc.* (2009) 175 Cal.App.4th 169, 176–177 [96 Cal. Rptr. 3d 1] [conduct underlying plaintiff's claims of retaliation and wrongful termination was that of preventing plaintiff from working by imposing restrictive work conditions, not a prelitigation letter written by employer's attorney imposing conditions]; *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1318 [135 Cal.Rptr.2d 903] [defendants were not sued for their conduct in exercising their constitutional rights, but to compel their compliance with the provisions of the rent control law]; *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207 [104 Cal.Rptr.2d 692] [conduct challenged in action alleging city failed to comply with competitive bidding requirement was not officials' communications or deliberations, but their failure to obey state and local laws].)" (*Donovan,* 204 Cal.App.4th at pp.1506-1507.)

However, the *Donovan* court distinguished the case of *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468 (*Damon*), in which the court concluded certain statements made during a homeowners association board meeting by two members of the board of directors disagreeing with the plaintiff's management of the association, were protected because, among other reasons, the statements were made in a "public forum." (*Donovan, supra,* 204 Cal.App.4th at p. 1507, fn. 3, citing *Damon, supra,* 85 Cal.App.4th at pp. 471-473.) "In reaching this determination, the court found that (1) the board meetings were televised and open to the public and (2) a homeowners association is in effect '"a quasi-government entity paralleling in almost every case the powers, duties, and responsibilities of a municipal government."' (*Id*. at p. 475, quoting

10

*Cohen v. Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642, 651 [191 Cal. Rptr. 209].)"  (*Donovan, supra,* 204 Cal.App.4th at p. 1507, fn. 3.)

"The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity.  (See *Macias v. Hartwell* [(1997)] 55 Cal.App.4th [669,] 674; *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 650-651 [49 Cal.Rptr.2d 620][, disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 68, fn. 5].)  '"[M]atters of public interest . . . include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals."' (*Macias v. Hartwell, supra*, 55 Cal.App.4th at p. 674.)  In *Macias*, the court found that campaign statements made during a union election constituted a "public" issue because the statements affected 10,000 union members and concerned a fundamental political matter—the qualifications of a candidate to run for office.  (*Id.* at pp. 673-674.)" (*Damon, supra,* 85 Cal.App.4th at p. 479.)

In *Damon, supra,* 85 Cal.App.4th 468, the court concluded the statements at issue pertained to issues of "public interest" within the Ocean Hills community because "they concerned the very manner in which this group of more than 3,000 individuals would be governed—an inherently political question of vital importance to each individual and to the community as a whole.  (See *Chantiles v. Lake Forest II Master Homeowners Assn.* (1995) 37 Cal.App.4th 914, 922 [45 Cal.Rptr.2d 1].)  Moreover, the statements were made in connection with the Board elections and recall campaigns.  'The right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech.  "Public discussion about the qualifications of those who hold or who wish to hold positions of public trust presents the strongest possible case for applications of the safeguards afforded by the First Amendment."'  (*Matson v. Dvorak*[ (1995)] 40 Cal.App.4th [539,] 548; accord, *Conroy v. Spitzer* (1999) 70 Cal.App.4th

11

1446, 1451 [83 Cal.Rptr.2d 443] [the defendant's 'statements obviously fell within the purview of section 425.16 because they addressed a matter of public concern—a candidate's qualifications and conduct in office'].) [¶] Although the allegedly defamatory statements were made in connection with the management of a private homeowners association, they concerned issues of critical importance to a large segment of our local population." (*Damon, supra,* 85 Cal.App.4th at p. 479.)

According to the record in this case, Checker Cab operates a taxi cab franchise issued by the City of Los Angeles. It operates nearly 300 taxis providing transportation to the citizens of and visitors to the City of Los Angeles; its taxis are driven by more than 500 drivers; and it provides as many as 1 million rides annually to passengers within the City of Los Angeles.

Subdivision (e)(4) of section 425.16 protects "any other conduct [(1)] in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech [(2)] in connection with a public issue or an issue of public interest." Unlike *Donovan, supra,* 204 Cal.App.4th 1500 in which the plaintiff's challenge was to the *outcome* of an election, in this case, Singh challenges Checker Cab's voting conduct itself, satisfying the first element of subdivision (e)(4), as voting is an element of First Amendment free speech. (See *Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 183, fn. 3, citations omitted ["voting is conduct qualifying for the protections afforded by the First Amendment"]; and see *Stella v. Kelley* (1st Cir. 1995) 63 F.3d 71, 75 ["Voting by members of municipal boards, commissions, and authorities comes within the heartland of First Amendment doctrine"].) Moreover, we conclude a government issued franchise's operation of 300 taxis, driven by 500 drivers for the benefit of 1 million passengers within the City of Los Angeles each year satisfies the second "public interest" element of subdivision (e)(4). (*Damon, supra,* 85 Cal.App.4th at p. 479 ["The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that

12

impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity"].)

Because the trial court found Checker Cab had failed to satisfy the first prong of section 425.16, subdivision (b), and did not reach the second prong of this analysis, remand is appropriate for the trial court to make this determination in the first instance.

*DISPOSITION*

The order is reversed. Checker Cab is to recover its costs on appeal.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**            **JACKSON, J.**