Filed 10/30/14  Lei v. Lin CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| IRIS LEI,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SHENGHENG LIN,<br><br>    Defendant and Appellant. | H039312<br>(Santa Clara County<br>Super. Ct. No. 112CV221911) |

Defendant Shengheng Lin appeals the trial court's denial of his special motion to strike plaintiff Iris Lei's first amended complaint (FAC) as a strategic lawsuit against public participation (SLAPP).  (Code Civ. Proc., § 425.16.)[1]  Plaintiff sued defendant for libel based on defendant's publication of allegedly defamatory remarks about plaintiff via e-mail to a Yahoo group for the Silicon Valley Chinese Engineers Association (SCEA).[2] On appeal, defendant claims the trial court erred in finding that plaintiff showed a probability of prevailing on the merits of her libel cause of action.  For the reasons stated here, we will affirm the trial court's order.

---

[1]  Unspecified statutory references are to the Code of Civil Procedure.

[2]  Defendant describes this Yahoo group as the "main community bulletin board" for the SCEA.

# I. TRIAL COURT PROCEEDINGS

This factual summary is taken from plaintiff's FAC, defendant's declaration in support of his anti-SLAPP motion, and plaintiff's declaration in support of her opposition to that motion.

## A. SCEA PRESIDENTIAL ELECTION AND ANIMOSITY BETWEEN THE PARTIES

Plaintiff owns a technology company, 99People, Inc. (99People), which runs an "internet portal website[,] www.99People.com, featuring high tech entrepreneurship and Sino-US business and cultural exchange among San Francisco Bay Area and metropolitan Chinese communities." She was elected president of SCEA in 2009 and served as president until 2011. SCEA is a non-profit organization that consists of "professionals of Chinese origin … working in high-tech industries." Many members live in the San Francisco Bay Area while others "are located nationwide and internationally." The Yahoo group for SCEA (SCEA Yahoo Group) "is comprised of thousands of recipients worldwide."

In August 2011, the SCEA Board of Directors held an election for plaintiff's replacement as president involving two candidates, Steve Xue and Wendy Liang. According to defendant, Liang was duly elected to succeed plaintiff at that election. Defendant claims that despite the validity of the August 2011 election, in November 2011 plaintiff and Xue challenged that election's legality and attempted to arrange for the SCEA Board of Directors to hold another election.

Defendant allegedly asked plaintiff to make him the director or leader of the Silicon Valley Innovation and Entrepreneurship Forum (SVIEF), a conference being organized by 99People. When plaintiff refused, defendant retaliated against plaintiff and "started a smear campaign" against her. "[I]n or about August 2011," defendant "called [plaintiff] by telephone to threaten [her] that [she] should variously resign the presidency of SCEA or abandon SVIEF, or [she] would 'face very bad consequences.' " Plaintiff

2

also claims defendant "badmouthed [her] to members of his university alumni association, where he is president."

Plaintiff alleges three libelous publications by defendant. First, plaintiff claims defendant, in collaboration with former codefendants, sent the minutes of a February 2012 meeting regarding the election dispute, which were written in Chinese, to members of SCEA by e-mail through the SCEA Yahoo Group.[3] Without including the original meeting minutes or alleging that the FAC contains a verbatim transcription thereof, the FAC alleges that the minutes claimed: "a. Lei orchestrated a dinner meeting on November 22, 2011, and lied to deceitfully attract attendance by certain Directors of the Board of SCEA, in order to elect Steve Xue as the new President of SCEA, leading to chaos and dysfunction at SCEA; [¶] b. Lei was guilty of a conflict of interest by controlling SCEA's website through 99People[,] Inc.[,] to blog personal attacks against Wendy Liang; and [¶] c. Lei made prank phone calls to harass, coerce and extort Wendy Liang while Liang was hospitalized, forcing Liang to apologize to Lei before Lei would stop her harassment."

The second allegedly libelous publication also occurred in February 2012, when defendant sent a statement written in Chinese via e-mail to the SCEA Yahoo Group alleging that: "a. Lei was surreptitiously usurping the name of the SCEA Board of Directors to spread lies and to mount personal attacks online against Wendy Liang; [¶] b. Lei was illicitly using SCEA resources for her personal gain, by forcing SCEA volunteers to work for free for 99People, Inc.[,] and at a SVIEF event, in order to reap personal profit; [and] [¶] c. Lei was using 99People to control SCEA's website as a means to attack and distort the image of SCEA, by spreading lies to give the public the false

---

[3] In her declaration in opposition to defendant's anti-SLAPP motion, plaintiff claims she dismissed the former codefendants after each of them apologized to her for the allegedly libelous statements.

3

impression that SCEA and 99People were cooperating with each other in order for Lei to illicitly profit." Plaintiff included neither the original statement nor a verbatim transcription with the FAC.

The final libelous publication plaintiff alleges came in the form of e-mails from defendant "to other defendants and several former officers of SCEA" where defendant claimed plaintiff "was using the title of President of SCEA to cheat people everywhere in China, and that Lei was getting illegal kickback[s] from the sponsorships that SCEA received." Plaintiff did not specify when these communications were sent or in what language they were written. Copies were not attached to the FAC.

In response to these statements, plaintiff sued several individuals (but not defendant) for libel, violation of her right to privacy (false light), and intentional infliction of emotional distress. In October 2012, plaintiff filed the FAC, which added defendant to the case, included the same causes of action, and alleged that the three libelous publications "significantly damaged Lei's reputation in the community and caused Lei to suffer extreme emotional and mental distress."

## B. DEFENDANT'S ANTI-SLAPP MOTION

Defendant responded by filing an anti-SLAPP motion, arguing that all publications allegedly made by defendant were made in furtherance of his First Amendment right to free speech on a public issue. Defendant filed a declaration in support of his motion in which he recounted his version of the events alleged in the FAC. Defendant claimed that plaintiff used her control of the SCEA website, which was hosted by 99People, to issue a news release in November 2011 challenging the legitimacy of the August 2011 election where Liang was elected to succeed plaintiff as president of SCEA. Defendant also listed a number of allegedly improper activities carried out by plaintiff related to SCEA, including: requiring SCEA volunteers to work at the 2011 SVIEF for the benefit of plaintiff's company 99People, Inc.; "hijacking the goodwill and power of

4

SCEA to benefit SVIEF[;]" and improperly taking a " 'finder's fee' " from donations to SCEA.

Defendant acknowledged in his declaration that a meeting occurred in February 2012 of former officers and directors of SCEA, where they discussed "how the bylaws were violated [by] … Lei's improper maneuver of the election" and "Lei's conflict of interests [*sic*] in developing SVIEF in the name of SCEA … ." The minutes of that meeting were "afterwards sent to SCEA members via" the SCEA Yahoo Group. Defendant did not state who sent the minutes or whether he attended the meeting. Defendant also described a meeting of SCEA's "Bylaws Committee," where he and others discussed "Lei's mismanagement of SCEA and [the] illegal election" arranged by plaintiff. The resolution that resulted from this meeting was also sent to the SCEA Yahoo Group but defendant does not state who sent it. Regarding e-mails to other SCEA members, defendant acknowledged that he sent e-mails to SCEA members but stated that all of his e-mails "regarding the impropriety of the new election organized by Lei and Lei's conflict of interests [*sic*] as SCEA's president" were sent for the purpose of "address[ing] the issues associated with her that we believed were destroying SCEA."

Plaintiff opposed the anti-SLAPP motion and filed a declaration where she summarized the libelous statements allegedly published by defendant but still did not attach the original publications or translations of them. Defendant filed a reply, supporting declarations, and a list of evidentiary objections to plaintiff's declaration. The trial court issued a tentative ruling in January 2013 denying defendant's anti-SLAPP motion with regard to plaintiff's libel and false light causes of action and granting the motion to strike plaintiff's intentional infliction of emotional distress cause of action.

At the hearing on the anti-SLAPP motion, defendant raised a new objection to paragraph nine of plaintiff's declaration, claiming that its summary of the contents of the published writings was inadmissible to prove the content of the writings, citing Evidence Code section 1523. The court took the matter under submission and issued a written

decision in February 2013 denying the anti-SLAPP motion as to the libel and false light causes of action and granting the motion regarding the intentional infliction of emotional distress cause of action. Regarding the Evidence Code section 1523 objection defendant raised at the hearing, the court found it "has merit." The court noted "a problem arises if Plaintiff's evidence fails to prove the contents of the challenged communications because ... Plaintiff's assertions in Paragraphs 9 and 12 of her declaration that the communications were untruthful is essentially lacking in foundation, and ... it would be necessary to grant [defendant's] motion ... ." However, the court found that plaintiff's failure to produce the actual writings was "not fatal to her case" because defendant "essentially concedes the existence and contents of the challenged communications in Paragraphs 13 and 14 of his own declaration," where defendant acknowledged the transmission of various statements to the SCEA Yahoo Group as well as sending e-mails to SCEA members about plaintiff.

The court then looked to the substance of the anti-SLAPP motion and found that defendant "meets his burden to show that the instant lawsuit arises out of protected activity ... but Plaintiff likewise satisfies her burden to establish a probability of success on the merits of her libel and invasion of privacy claim[s] because her evidence shows that the challenged communications were false, and that Lin acted with malice." The court denied each side's request for attorney fees and costs.

## II.   DISCUSSION

The filing and resolution of anti-SLAPP special motions to strike is governed by section 425.16. An anti-SLAPP motion can be filed when a cause of action implicates "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subds. (b)(1), (e)(4); *Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 757 (*Kurz*).) To determine whether a cause of action is a SLAPP, section 425.16 involves a two-step process. First, a defendant must show that the lawsuit arises from protected First Amendment activity falling within any of the four categories

6

of section 425.16, subdivision (e).[4]  (*Kurz,* at p. 757.)  If the defendant can make that showing, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim."  (*Id*. at p. 758; § 425.16, subd. (b)(1).)  We review an order granting or denying an anti-SLAPP motion de novo (*Kurz,* at p. 758), considering "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  (§ 425.16, subd. (b)(2).)

## A. THRESHOLD SHOWING OF PROTECTED ACTIVITY

The trial court found that plaintiff's lawsuit was directed toward protected activity, citing section 425.16, subdivision (e)(4), which protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  On appeal, plaintiff contends that "the statements here at issue were privately communicated within a private association among its insiders about a topic of short-lived, private ... interest - and thus are not eligible for protection under the anti-SLAPP statute."  Defendant contends that plaintiff is barred from raising this argument on appeal because she did not file a cross-appeal and also maintains that the trial court correctly found that the statements were made in connection with a public issue or an issue of public interest.

---

[4]  Section 425.16, subdivision (e), provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Regarding plaintiff's ability to raise the issue, defendant cites *Estate of Powell* (2000) 83 Cal.App.4th 1434, where the court noted, "[a]s a general matter, 'a respondent who has not appealed from the judgment may not urge error on appeal.' [Citation.]" (*Id.* at p. 1439.) However, in the very next sentence, the *Powell* court goes on to explain that "Code of Civil Procedure section 906 provides a limited exception 'to allow a respondent to assert a legal theory which may result in affirmance of the judgment.' [Citation.]" (*Ibid.*) Because a finding that plaintiff's lawsuit did not arise out of protected activity would lead to affirmance (albeit on a ground different from the trial court's reasoning), plaintiff may raise this issue on appeal without filing a cross-appeal.

Turning to the merits, conduct "in connection with a public issue or an issue of public interest" generally falls into one of three broad categories: (1) statements concerning "a person or entity in the public eye"; (2) "conduct that could directly affect a large number of people beyond the direct participants"; or (3) "a topic of widespread, public interest ... ." (*Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924 (*Rivero*) [collecting cases for each category].) The Legislature has directed that the courts construe this language broadly. (§ 425.16, subd. (a); *Rivero,* at p. 918.)

As to the first category, whether plaintiff is a person in the public eye, cases falling into this category generally involve conduct directed toward either well-known celebrities or at least individuals who have willfully injected themselves into nationally accessible entertainment media. (See *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 801-802, 808 [finding statements about the plaintiff's appearance on a reality television show was related to an issue of public interest].) The record before us does not support a finding that plaintiff is so generally recognizable as to warrant being deemed a person in the public eye.

Defendant asserts that the second category applies because statements plaintiff alleges in the FAC " 'could affect large numbers of people beyond the direct

8

participants.' " (Quoting *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 33.) " 'Although matters of public interest include legislative and governmental activities, they may also include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals.' [Citation.]" (*Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 674 (*Macias*).) When, as here, "the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance." (*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119 (*Du Charme*), italics omitted.)[5] Cases involving this "ongoing controversy" standard have generally involved homeowners associations or unions. (See, e.g., *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479 (*Damon*) [statements regarding governance of 3,000-person homeowners association]; *Macias, supra,* 55 Cal.App.4th at pp. 673-674 [statements regarding qualifications of candidate in union election affecting 10,000 members].) In the case of homeowners associations, courts finding an issue of public interest have noted that because homeowners associations are quasi-governmental entities, a statement made in relation to an association election "affects a community in a manner similar to that of a governmental entity." (*Damon,* at pp. 475, 479.)

---

[5] Though we note another panel of this court has questioned the *Du Charme* rule as being "derived from an observation of only three cases and not based on a more comprehensive survey of cases, an analysis of legislative intent, or a discussion of statutory interpretation," (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 381), the rule has nonetheless been widely accepted. (See, e.g., *Cabrera v. Alam* (2011) 197 Cal.App.4th 1077, 1090-1091 (*Cabrera*); *Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 737-738; *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1549-1550.)

9

One of the few cases to discuss whether conduct constitutes an issue in the public interest outside of the context of a homeowners association or a union is *Donovan v. Dan Murphy Foundation* (2012) 204 Cal.App.4th 1500 (*Donovan*). In *Donovan*, the board of directors of a large non-profit organization voted to remove Donovan as a director. Donovan filed a complaint for wrongful removal against the organization and the remaining directors and the defendants responded with an anti-SLAPP special motion to strike. (*Id.* at pp. 1503-1504.)

On appeal from the trial court's denial of the anti-SLAPP motion, the defendants claimed the vote to remove Donovan was " 'in connection with a public issue or an issue of public interest.' " (*Donovan, supra,* 204 Cal.App.4th at p. 1508, quoting § 425.16, subd. (e)(4).) The appellate court disagreed, reasoning that "[e]ven were we to assume that any act of voting is an exercise of the constitutional right of free speech, respondents have not shown that the vote to remove Donovan was 'in connection with a public issue or an issue of public interest.' " (*Donovan,* at p. 1508, quoting § 425.16, subd. (e)(4).) The court stated there was "no evidence of widespread public interest" in the governance of the organization and noted the defendants had not submitted any news articles indicating public interest in the dispute. (*Id.* at pp. 1508-1509.) The court reasoned that even the large size of the organization, its oversight by the Attorney General, and the amount of money the organization donated annually were insufficient to "transform a private disagreement among directors of the [organization] into a public issue or an issue of public interest." (*Id.* at p. 1509.) The court distinguished *Damon* and *Cabrera,* finding that, unlike the homeowners associations at issue in those cases, the non-profit organization at issue in *Donovan* "is not a quasi-governmental entity" and there was "no evidence that the [organization] affects a community in a manner similar to that of a governmental entity." (*Donovan,* at pp. 1507, fn. 3 & 1509, fn. 4, italics omitted.)

Applying these principles here, plaintiff's FAC alleged that defendant published false statements accusing plaintiff of, among other things, improperly interfering with the

10

election of her successor and abusing her position as president of SCEA to obtain illegal kickbacks from SCEA sponsors. Though the record does not support a finding that improprieties of the SCEA election were an issue of general public interest, defendant claims the conduct was of interest to individuals on the SCEA Yahoo Group, which is a "limited, but definable portion of the public." (*Du Charme, supra,* 110 Cal.App.4th at p. 119.) Further, the conduct occurred in the context of an "ongoing controversy" because the statements were published during a transitional period following a disputed election for the president of SCEA. (*Ibid.*)

While the foregoing suggests defendant carried his burden of showing the conduct alleged in the FAC is an issue of public interest, we find the reasoning of *Donovan* persuasive on these facts. Though defendant focuses on the size of the SCEA Yahoo Group, which contains "thousands" of individuals, the size of a group, standing alone, is insufficient to turn specific conduct into an issue of public interest.[6] (*Donovan, supra,* 204 Cal.App.4th at p. 1509.) Additionally, there is no evidence that SCEA "affects a community in a manner similar to that of a governmental entity" in the ways that homeowners associations or unions do. (*Id.* at p. 1509, fn. 4.) Homeowners associations exercise significant control over certain aspects of members' lives. (See, e.g., *Damon, supra,* 85 Cal.App.4th at p. 475 [homeowners association board "played a critical role in making and enforcing rules affecting the daily lives of … residents."].) Unions likewise significantly affect the work lives of members and the collective bargaining engaged in by unions affects long-term issues such as member health plans. (See, e.g., *Hailstone, supra,* 169 Cal.App.4th at p. 738 [finding allegations that trustee of union health and

---

[6] Defendant's reply brief first claims SCEA has 6,500 members and then later increases that estimate to 15,000. Plaintiff offers a much lower membership estimate in her respondent's brief, claiming the group had "hundreds" of members. For purposes of our discussion, we will rely on the estimate in the FAC, where plaintiff alleged the SCEA Yahoo Group "is comprised of thousands of recipients worldwide."

11

welfare fund trust misappropriated money was issue of public interest].) From the record before us, it appears that SCEA is a business association that has little effect on the individuals who are part of the SCEA Yahoo group. Though defendant's production of an article that he claims appeared in the World Journal, "the largest Chinese-language newspaper in the United States," regarding the disputed election distinguishes this case from *Donovan*, that is not enough to overcome the predominantly private nature of the dispute alleged in plaintiff's FAC.

We conclude defendant's statements were not "in connection with a public issue or an issue of public interest" (§ 425.16, subd. (e)(4)), and were therefore outside the scope of anti-SLAPP protection. In light of our conclusion, we do not reach the second prong of the anti-SLAPP statute, namely, whether plaintiff adequately demonstrated a probability of prevailing on her libel and false light causes of action.

## III. DISPOSITION

The order is affirmed.

_____

Grover, J.

**WE CONCUR:**


_____

Bamattre-Manoukian, Acting P.J.



_____

Mihara, J.