Filed 3/22/16  Bernato v. Peasley CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TRISTA BERNATO et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>FREDERICK A. PEASLEY,<br><br>    Defendant and Appellant. | B256486<br><br>(Los Angeles County<br>Super. Ct. No. LP017194) |

        APPEAL from an order of the Superior Court of Los Angeles County, David S. Cunningham III, Judge.  Affirmed.

        Klapach & Klapach and Joseph S. Klapach for Defendant and Appellant.

        Joseph A. Hearst for Plaintiffs and Respondents.

                        _____

In this case contesting distribution of the deceased Betty Peasley's (Betty) estate, Betty's daughter and granddaughter, Christine Dagodag and Trista Bernato (Respondents), brought this lawsuit against Betty's son Frederick (Rick) Peasley (Appellant) and Betty's other granddaughter Melissa Dagodag.[1] Respondents' complaint asserts the validity of a will and trust from 2003 and disputes the validity of a subsequent will and trust revocation from 2009. Appellant and Melissa filed an anti-SLAPP motion to dismiss all claims in Respondents' complaint, which is a method for early dismissal of meritless lawsuits intended to chill or punish a party's exercise of the constitutional rights to free speech and to petition the government for redress of grievances. The trial court granted the anti-SLAPP motion for claim 5, dismissed claim 5 from the case, yet denied Appellant's request for attorney fees as the prevailing party on claim 5. Appellant appeals the trial court's denial of attorney fees as to claim 5 and the trial court's denial of the anti-SLAPP motion as to the remaining claims 1-4 and 6-8. Respondents did not file a cross-appeal. We affirm the trial court's denial of attorney fees for claim 5 and the trial court's denial of the anti-SLAPP motion as to the remaining claims 1-4 and 6-8. This holding does not address the merits of Respondents' claims in their complaint but merely permits their lawsuit to proceed beyond this initial stage.

## BACKGROUND

### I.     Facts of the case

Betty passed away in February 2013 at the age of 98. She had two children: Appellant and Christine, the mother of Melissa and Trista.

---

[1] Christine Dagodag and Trista Bernato are plaintiffs and respondents; Rick Peasley and Melissa Dagodag are defendants but only Rick is an appellant. For clarity, because the parties and the deceased share the same last names, we refer to Rick as Appellant and Christine and Trista collectively as Respondents, but when referring to a specific person, we use first names. We intend no disrespect to the parties by the use of first names.

In 1998, Betty executed a will and trust directing the manner of distribution of the assets of her estate; she later amended the trust in 2001 and 2003. The 2003 trust (2003 Trust) directed distribution of Betty's house to Respondents and the remainder of Betty's assets to Appellant and Melissa. A February 2009 handwritten will (2009 Will), however, expressly directed equal distribution of Betty's entire estate among the two children, Christine and Appellant, and the two grandchildren, Trista and Melissa: "Money to be left to above persons in equal amounts one quarter of my funds, house and other property in equal amounts to each of the above listed family members. [¶] To be clear I want 25% of my total estate to go to Christine Dagodag, 25% to go to Rick Peasley and 25% to Trista Dagodag Bernato, and 25% to Melissa Dagodag." An April 2009 handwritten trust revocation (2009 Trust Revocation) revoked Betty's 2003 Trust.

In March 2013, Appellant filed with the probate court a petition to probate the 2009 Will. Simultaneously, he petitioned the probate court to appoint him as special administrator for Betty's estate, which the probate court did. In June 2013, Respondents filed a petition to probate the 1998 will and thus administer the 2003 Trust; they also contested Appellant's appointment as special administrator. A few days later, the probate court appointed a third party to replace Appellant as special administrator. In August, Appellant filed a report with the probate court containing his findings from the period when he had served as the special administrator. His report alleged that Respondents had committed elder abuse on Betty.

As Respondents and Appellant dispute the events occurring before Betty's death, we provide below separate sections describing each side's factual allegations.

*a.* ***Respondents' allegations on events before Betty's death***

In their complaint and declarations supporting their opposition to the anti-SLAPP motion, Respondents assert the following factual allegations concerning the events before Betty's death.

In 1997, Betty asked Trista and her husband to move in with her. Despite Betty's house being cramped and in need of repairs, they moved in with Betty to help her in her old age. For the remaining 15 years of Betty's life, Respondents attended to Betty's daily

3

errands. When Appellant learned of Betty's 2003 Trust which would distribute Betty's house to Respondents and the remainder of Betty's assets to Appellant and Melissa, he complained to Betty.[2]

By 2008, a doctor had diagnosed Betty with impaired judgment and significant cognitive impairment consistent with dementia or likely early dementia. During this time, Melissa visited Betty regularly to ask for money. Betty generally gave her the requested money but eventually became angry over the increasing amounts and frequency of Melissa's requests. Toward the end of her life, because of her dementia, Betty may have been unaware of how many checks she wrote to Melissa. Melissa also introduced Betty to a new attorney so Betty could change her will to bequeath more assets to Melissa and Appellant than the 2003 Trust contemplated. After learning that Melissa had been at Betty's house with a new attorney for Betty, Trista's husband gave the name of the new attorney, Jane Hall, to Betty's current attorney, Harvey Gilbert, and Betty's engagement with the new attorney ended.

In 2009, after Betty fell several times,[3] her doctor refused to release her from the hospital unless she went directly into a nursing facility. Respondents found a nursing facility for Betty, and she began living there in April. After Betty began living in the nursing facility, Trista and her family continued to live in Betty's house and paid all utilities as well as significant repair and maintenance expenses. Also, on February 24, 2009, Betty executed the 2009 Will, which Melissa witnessed.

On April 22, Appellant took Betty out of the nursing home and on a trip to his home located 450 miles away, where she remained for two days. Appellant did not have Betty's clothing or medication. When he returned her to the nursing home on April 24, Betty was "disoriented, dirty, exhausted and barely able to speak." She had no

---

[2] As the trial court excluded Appellant's letter from evidence, the record contains limited information as to the nature of his complaints to Betty concerning the 2003 Trust.

[3] The record is not clear on the specific dates of Betty's falls.

4

recollection of where she had been for those two days. During that time, Betty executed the 2009 Trust Revocation, dated April 22.

In May, Betty sent a letter to her attorney Mr. Gilbert asking for a copy of her estate planning documents. The attorney believed Betty was incompetent and therefore did not follow her instructions. When he met with her a week later, Betty had no recollection of writing that letter to her attorney.

Respondents did not learn of the 2009 Will and the 2009 Trust Revocation until Appellant filed these documents with the probate court in March 2013.

### b. Appellant's allegations on events before Betty's death

In declarations supporting his anti-SLAPP motion, Appellant asserts the following factual allegations of the events occurring before Betty's death.

Respondents handled Betty's finances. As Appellant lived 450 miles away, he visited Betty only three times in the twenty years before her death.

As the value of Betty's house was approximately the same as the value of her remaining assets such as cash and securities at the time, the 2003 Trust divided her estate equally among Respondents, Appellant, and Melissa by directing distribution of her house to Respondents and distribution of her remaining assets to Appellant and Melissa. In the subsequent years, however, the house appreciated in value, but Betty depleted her cash and securities. Thus, the value of Betty's house no longer approximated the value of her cash and securities. As Betty's 2003 estate plan directed distribution of a highly-valuable house to Respondents but a minimal amount of cash and securities to Appellant and Melissa, Betty's 2003 estate plan unintentionally would have resulted in Respondents receiving more valuable assets than Appellant and Melissa. To eliminate the effect of the fluctuating value of the assets in her estate, in 2008, Betty wanted to revise her estate plan to split the assets equally among the two children and two grandchildren.

In July 2008, Betty met with an estate planning attorney to change her estate plan accordingly. When Respondents learned of this intention, they stopped payment on Betty's retainer check to the new attorney and directed Betty's previous attorney to write to the new attorney to stop representing Betty.

5

In February 2009, Betty again attempted to split her estate equally. During one of Melissa's visits, she executed the 2009 Will, which expressly mandated an "equal amounts one quarter" distribution to each of Respondents, Appellant, and Melissa. Betty gave the 2009 Will to Melissa for safekeeping. Appellant had no prior knowledge of this will and had nothing to do with its creation. When Melissa later told Appellant of the will, she did not reveal how the will directed distribution of Betty's assets. A few months later, in April, Betty executed the 2009 Trust Revocation, which revoked her 2003 Trust and thus restated her intentions consistent with the 2009 Will.

In April 2009, Respondents moved Betty to an assisted living facility. As she could afford in-home care, Betty objected to moving out of her house. During the next four years, Trista and her family lived in Betty's house without paying rent to Betty.

## II. Procedural history

Respondents filed a complaint against Appellant and Melissa, asserting claims for financial elder abuse (claim 1), constructive fraud based on breach of a fiduciary duty and active participation in breach of a fiduciary duty (claim 2), undue influence and coercion (claim 3), a determination of ownership of estate property (claim 4), conversion (claim 5), quiet title to Betty's house (claim 6), the imposition of a constructive trust (claim 7), and declaratory relief (claim 8).

Appellant and Melissa filed an anti-SLAPP motion to dismiss the complaint. Appellant, Melissa, and Respondents filed multiple affidavits asserting factual allegations to support their motion and opposition, respectively. The trial court granted the motion only as to claim 5 for conversion and declined to grant attorney fees to Appellant and Melissa.

Appellant appeals the trial court's denial of attorney fees as to claim 5 and the trial court's denial of the anti-SLAPP motion as to the remaining claims 1-4 and 6-8. Respondents did not file a cross-appeal.

## DISCUSSION

The anti-SLAPP statute provides a method for early dismissal of meritless lawsuits intended to chill or punish a party's exercise of the constitutional rights to free

6

speech and to petition the government for redress of grievances. (*Antounian v. Louis Vuitton Malletier* (2010) 189 Cal.App.4th 438, 447.) SLAPP stands for strategic lawsuit against public participation. (*Ibid.*)

Code of Civil Procedure section 425.16, subdivision (b)(1), provides the two-prong analysis of an anti-SLAPP motion: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike [prong one], unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim [prong two]."[4]

We review de novo a trial court's ruling on an anti-SLAPP motion. (*Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1408.)

## I. Prong one: Respondents' claims do not arise from protected speech or conduct.

Under prong one, Appellant has the burden to show that Respondents' claims arise from an act by Appellant in furtherance of his constitutionally protected right of petition or free speech in connection with a public issue. (§ 425.16, subd. (b).) Appellant can meet this burden by demonstrating that the act underlying Respondents' claims fits one of the categories in section 425.16, subdivision (e). As relevant here, subdivision (e) recites that a statement or writing made before a judicial proceeding or made in connection with an issue under consideration or review by a judicial body is constitutionally protected and therefore satisfies prong one of the anti-SLAPP statute. (§ 425.16, subd. (e).)

Appellant contends Respondents' complaint arises from Appellant and Melissa's conduct in obtaining the 2009 Will and the 2009 Trust Revocation from Betty and also Appellant's actions as special administrator before the probate court. Appellant argues that the latter conduct constitutes constitutionally protected statements and writings

---

[4] All further statutory references are to the Code of Civil Procedure.

7

before a judicial proceeding or judicial body under subdivision (e) of the anti-SLAPP statute and therefore satisfies prong one.

Respondents counter that the gist of their lawsuit is Appellant and Melissa's conduct in coercing or unduly influencing Betty to execute the 2009 Will and the 2009 Trust Revocation, which is not constitutionally protected conduct. Respondents only mention in their complaint Appellant's conduct as special administrator to provide a complete account of the facts. Even if Appellant had not sought to be special administrator, Respondents would still have filed this lawsuit.

Where a claim arises from both protected and unprotected activity, if the protected conduct is "merely incidental" to the unprotected conduct then the anti-SLAPP statute does not apply under prong one. (*Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 967–968.) We proceed now to analyze each of Respondents' claims on appeal to determine whether Appellant's protected conduct as special administrator is "merely incidental" to Appellant and Melissa's unprotected conduct in obtaining the 2009 Will and the 2009 Trust Revocation from Betty.[5]

Here, claim 1 for financial elder abuse, claim 2 for breach of fiduciary duty, and claim 3 for undue influence and coercion, allege Appellant and Melissa had a fiduciary duty to Betty and breached that duty by coercing or unduly influencing Betty to execute the 2009 Will and the 2009 Trust Revocation. Financial elder abuse occurs when a person takes, secretes, appropriates, obtains, or retains real or personal property of someone 65 years of age or older for a wrongful use, with intent to defraud, or by undue influence. (*Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 478.) Undue influence consists (1) "'In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the

---

[5] Appellant and Respondents provide arguments in their briefs on whether claim 5 satisfies prong one of the anti-SLAPP statute. But Respondents did not file a notice of appeal seeking review of the trial court's granting the anti-SLAPP motion as to claim 5. Thus, whether the trial court correctly held that the anti-SLAPP statute applies to claim 5 is not an issue on appeal for our review.

8

purpose of obtaining an unfair advantage over him'"; (2) "'In taking an unfair advantage of another's weakness of mind'"; or (3) "'In taking a grossly oppressive and unfair advantage of another's necessities or distress.'" (*Id.* at p. 479, citing Civ. Code, § 1575.) The elements of a cause of action for the breach of a fiduciary duty are: (1) the existence of a fiduciary duty, (2) the breach of the fiduciary duty, and (3) the breach proximately caused the damage. (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1114.)

All of the factual allegations of the complaint supporting claims 1 and 3 concern Appellant and Melissa's conduct in obtaining the 2009 Will and the 2009 Trust Revocation from Betty. For example, claim 1 asserts that Appellant and Melissa "unduly influenced, coerced, procured and then secreted from Decedent [Betty] a holographic will and trust revocation [the 2009 Will and the 2009 Trust Revocation]." Claim 3 alleges Appellant and Melissa "took unfair advantage of Decedent's weakness of mind by continuously asking, pressuring, coercing, and unduly influencing Decedent to execute the holographic instruments [the 2009 Will and the 2009 Trust Revocation]." These sections of the complaint concerning claims 1 and 3 contain no express mention of Appellant's conduct as special administrator before the probate court.

Appellant argues that a separate section in the complaint discussing the factual background mentions his conduct as special administrator and that every claim incorporates by reference that section. The mere mention of protected conduct, however, does not subject the claim to an anti-SLAPP motion. In this case, the absence of an express mention of the protected conduct in contrast to the repeated statements describing the unprotected conduct in the sections for claims 1 and 3 manifests that Appellant's conduct as special administrator is "merely incidental" to Appellant and Melissa's conduct in obtaining the 2009 Will and the 2009 Trust Revocation from Betty. Further, Betty was dead when Appellant was a special administrator before the probate court, so Appellant and Melissa cannot have unduly influenced her at that point in time.

Similarly, almost all the factual assertions in the three pages supporting claim 2 concern Appellant and Melissa's conduct in obtaining the 2009 Will and the 2009 Trust

9

Revocation from Betty. For example, Respondents allege that as a consequence of Appellant and Melissa's "family relationship and status as lawyers," they owed a fiduciary duty to Betty. Respondents next contend that fiduciary duty required Appellant and Melissa to "make full and complete disclosure of all material facts" when Betty executed the 2009 Will and the 2009 Trust Revocation, such as telling Betty to obtain "independent counsel" before executing those estate planning documents in favor of Appellant and Melissa. Respondents assert that Appellant and Melissa breached that duty by failing to "fully disclose all the facts of the transactions by which they obtained the 2009 holographic instruments [the 2009 Will and the 2009 Trust Revocation]" from Betty.

One vague reference in the middle of the lengthy three pages on claim 2 could arguably pertain to Appellant's conduct as special administrator: "Rick and Melissa's actions during and after Betty's death fail this test and show fraud, perjury, and elder abuse against this Court, their mother and grandmother, their sister and niece, and the Trust." But the next sentence repeats Appellant and Melissa's conduct in obtaining the 2009 Will and the 2009 Trust Revocation from Betty: "All presumptions are against Rick and Melissa, as fiduciaries, for failing, inter alia, to seek independent counsel for Betty as she undertook to execute holographic instruments [the 2009 Will and the 2009 Trust Revocation] in their favor." The possible reference to Appellant's conduct after Betty's death does not transform the nature of the lengthy accusations related to Appellant and Melissa's conduct in obtaining the 2009 Will and the 2009 Trust Revocation from Betty and therefore is "merely incidental" to it.

Claim 4 for a determination of ownership of Betty's house, claim 6 for quiet title to Betty's house, claim 7 for the imposition of a constructive trust on Betty's house, and claim 8 for declaratory relief are not substantive legal causes of action; instead, they are remedies for wrongs caused by the alleged misconduct underlying claims 1-3. Respondents allege as to claims 4, 6, and 7, "As a result of the financial elder abuse [asserted in claim 1], breach of fiduciary duty and constructive fraud [asserted in claim 2], and undue influence [asserted in claim 3] by Rick [and] Melissa, . . . Plaintiffs are

10

entitled to an order determining that Tina [Christine], as successor trustee of the Betty E. Peasley Revocable Trust [the 2003 Trust], . . . is the equitable owner of the Premises of Decedent [Betty's house]."[6]  In light of their origin in claims 1-3, claims 4, 6, and 7 arise from the same conduct by Appellant and Melissa upon which claims 1-3 arise—namely, obtaining the 2009 Will and the 2009 Trust Revocation from Betty, not Appellant's conduct as special administrator.  Claim 8 begins with the following explanation of what declaratory relief it seeks:  "With respect to the obligations imposed by virtue of the above-described holographic instruments [the 2009 Will and the 2009 Trust Revocation], Plaintiffs contend that each and all of the alleged transfers of Decedent's property" to Appellant and Melissa are "void or voidable" and thus seek "a determination as to the invalidity of each of the transfers . . . ."  This reference to the 2009 Will and the 2009 Trust Revocation mandates a conclusion that claim 8 derives from Appellant's and Melissa's alleged misconduct in procuring the 2009 documents as described in claims 1-3.

We conclude that for each claim on appeal, Appellant's protected conduct as special administrator is "merely incidental" to Appellant and Melissa's unprotected conduct in obtaining the 2009 Will and the 2009 Trust Revocation from Betty. Therefore, Appellant failed to meet his burden to prove Respondents' claims on appeal arise from his protected conduct as special administrator.

---

[6] Claims 6 and 7 omit the reference to claim 3 for undue influence.

11

**II.     Prong two:  Respondents have shown a probability of prevailing on their claims.**

In light of Appellant's failure to meet his burden of proof to show protected conduct on prong one, we need not consider his argument that Respondents did not show a probability of prevailing on their claims under prong two.  Yet, we provide this analysis as an alternate basis for analyzing his and Melissa's anti-SLAPP motion.  (See *Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 409.)

Under prong two, Respondents have the burden to show a probability of prevailing on their claims.  (§ 425.16, subd. (b).)  They must show that each claim is both "'"legally sufficient"'" and "'"supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'"  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89.)  Appellant challenges the trial court's determination on the latter issue.  On that point, in order to protect plaintiffs against overbroad application of the anti-SLAPP statute and to avoid a potentially unjust deprivation of a jury trial, we have held that a plaintiff's claim need only have "minimal merit."  (*Id.* at pp. 89, 95; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123.)  Respondents need not "'*prove*'" the claim to the trial court.  (*Briggs*, at p. 1123.)

We must consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  (§ 425.16, subd. (b)(2).)  We accept as true all evidence favorable to the plaintiff.  (*Donovan v. Dan Murphy Foundation* (2012) 204 Cal.App.4th 1500, 1506.)  We do not weigh or determine the credibility of competing evidence.  (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

Relying on multiple affidavits from Christine, Trista, Trista's husband, Betty's attorney, Melissa, and Rick, Respondents have alleged that Appellant and Melissa improperly coerced or unduly influenced Betty to execute the 2009 Will and the 2009 Trust Revocation, as described in the Background section above.  As explained *ante*, claims 1, 2, and 3 each respectively allege that Appellant and Melissa had a fiduciary relationship with Betty and that they breached that duty by coercing or unduly

12

influencing Betty to execute the 2009 Will and the 2009 Trust Revocation. Claim 4 for a determination of ownership of Betty's estate property, claim 6 for quiet title to Betty's house, claim 7 for the imposition of a constructive trust on Betty's house, and claim 8 for declaratory relief, provide remedies for the wrongs caused by the alleged misconduct underlying claims 1-3. If found true, these factual allegations are sufficient to support Respondents' claims in their complaint.

While Appellant presents competing evidence, we do not determine on appeal for the first time which side presents the most compelling story. In this appeal, Appellant ignores the tenet that we must accept as true all evidence favorable to Respondents. Though Appellant presents competing evidence that he had no prior knowledge of the 2009 Will and did not unduly influence Betty to execute the 2009 Trust Revocation, that competing evidence does not defeat Respondents' evidence as a matter of law.[7] (See *Donovan v. Dan Murphy Foundation*, *supra*, 204 Cal.App.4th at p. 1506.) Instead, this is a classic "he-said-she-said" factual dispute for the factfinder to resolve.

## III. The trial court appropriately exercised its discretion in denying attorney fees.

Appellant argues that because the anti-SLAPP statute imposes a mandatory award of attorney fees to the prevailing party on an anti-SLAPP motion and the trial court granted his anti-SLAPP motion for claim 5, then the trial court erred in refusing to grant his request for attorney fees. Though he relies on the California Supreme Court's description of the attorney fees provision in the anti-SLAPP statute as "mandatory," he also acknowledges that appellate courts have held that trial courts have the discretion not to award attorney fees when a defendant's anti-SLAPP motion effectively "accomplished nothing." (*Moran v. Endres* (2006) 135 Cal.App.4th 952, 955 (*Moran*).) Appellant argues that his motion struck a substantive claim with elements different from the other

---

[7] Appellant improperly uses language such as Respondents "failed to present any evidence," which ignores that Respondents presented affidavits with competing evidence. While Appellant is free not to believe such evidence, he cannot characterize it as nonexistent.

13

remaining claims and significantly limited the scope of the lawsuit by limiting the areas of permissible discovery and Respondents' possible recovery against him.

In *Moran*, *supra*, 135 Cal.App.4th 952, Division Five of this District affirmed the trial court's denial of attorney fees when the defendants prevailed only on dismissing a single cause of action, civil conspiracy, in their anti-SLAPP motion. The court concluded that the defendants' anti-SLAPP motion "accomplished nothing, except that plaintiffs were put to the cost of defending the motion." (*Id.* at p. 955.) The factual allegations that remained against the defendants did not change and were not diminished, as the civil conspiracy claim incorporated the factual allegations made in the other remaining claims. (*Id.* at p. 954.) The legal allegations also did not change substantially, because conspiracy standing alone is not a cause of action but instead depends on the commission of another tort, which the defendants still had to defend. (*Id.* at pp. 954–955.) The court concluded that there was no change in the possible recovery against the defendants, no change in the factual allegations that the defendants had to defend, and no change in the work involved in trying the case, and therefore the results of the defendants' anti-SLAPP motion was "minimal and insignificant, fully justifying the court's finding that defendants should not recover fees." (*Id.* at p. 955.)

Claim 5 alleged conversion of the property in Betty's estate. Conversion is "'"""the wrongful exercise of dominion over the property of another."'"'" (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240.) The elements to prove conversion are: (1) the plaintiff's ownership or the right to possession of the property at issue, (2) the defendant's conversion by a wrongful act or disposition of property rights, and (3) damages. (*Ibid.*) Respondents allege Appellant and Melissa committed conversion of the property in Betty's estate as follows: "As a result of a Petition for Special Administration and a Petition for Probate," Appellant and Melissa "caused the property of Decedent's Trust to be transferred to a Special Administrator of the Estate of Betty E. Peasley, which Estate was unnecessary and duplicative in light of Decedent's Trust and its administration [the 2003 Trust]." Respondents seek a court "order determining that Tina [Christine], as trustee of the Betty E. Peasley Revocable Trust [the 2003 Trust] . . . is the equitable

owner of the Premises of Decedent [Betty's house]."

The first element of conversion that Appellant would have had to defend relates to the continued validity of the 2003 Trust, and the second element of conversion that Appellant would have had to defend relates to the disputed validity of the 2009 Will and the 2009 Trust Revocation. Both are allegations that Appellant must still defend as to the claims that survived his anti-SLAPP motion. For example, claim 1 for financial elder abuse, claim 2 for breach of fiduciary duty, and claim 3 for undue influence and coercion, all allege that the 2003 Trust is valid and the 2009 Will and the 2009 Trust Revocation are not valid. Further, while Appellant argues that only claim 5 sought punitive damages, claims 1 to 3 also seek punitive damages.

As in *Moran*, *supra*, 135 Cal.App.4th 952, Appellant's anti-SLAPP motion did not substantially change the allegations that Appellant still has to defend or the possible recovery against Appellant. The outcome of Appellant's anti-SLAPP motion was "minimal and insignificant, fully justifying the court's finding that defendants should not recover fees." (*Id.* at p. 955.)

## DISPOSITION

The order is affirmed. Trista Bernato and Christine Dagodag shall recover costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.


15