Filed 7/20/21  Marien v. Holland CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROBIN MARIEN et al., Plaintiffs and Respondents, v. MARJORIE M. HOLLAND, Defendant and Appellant. | D077586 (Super. Ct. No. 37-2015-00015685-CU-DF-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Marjorie Mae Holland, in pro. per., for Defendant and Appellant.

Shewry & Saldaña and Christopher C. Saldaña for Plaintiffs and Respondents.

Robin Marien, Gabriel Jebb, and Air California Adventure, Inc. (ACA) (together, Plaintiffs) filed a first amended complaint (FAC) alleging defamation and other causes of action against defendant Robert Michael Kuczewski and unnamed Doe defendants arising out of, inter alia, alleged false statements regarding Plaintiffs' operation of the Torrey Pines

Gliderport (TPG). In *Marien v. Kuczewski* (D069836, Sept. 28, 2017) [nonpub. opn.] (*Marien I*), we affirmed the trial court's order denying Kuczewski's motion to strike the FAC under Code of Civil Procedure[1] section 425.16, the anti-SLAPP (strategic lawsuit against public participation) statute. (*Marien I*, at pp. 21, 29.)

On remand, Plaintiffs filed a second amended complaint (SAC), which added Holland as a named defendant in place of a Doe defendant, but did not allege any new false statements regarding Plaintiffs. Holland then filed a section 425.16 motion to strike the SAC. Applying our reasoning in *Marien I*, the trial court denied Holland's motion to strike, concluding, inter alia, that none of the false statements alleged in the SAC were made in connection with a public issue or an issue of public interest within the meaning of section 425.16, subdivision (e)(3) or (4). Holland appeals the order denying her motion.

Based on our reasoning *post*, we conclude the court correctly denied Holland's anti-SLAPP motion.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

In July 2015, Plaintiffs filed the FAC, which alleged 33 causes of action against Kuczewski, including 27 causes of action for defamation.[3] The FAC

---

1    All statutory references are to the Code of Civil Procedure unless otherwise specified.

2    The factual background is based on our opinion in *Marien I*, *supra*, at pages 2 to 7, and the allegations set forth in the SAC. We begin by restating our factual and procedural background discussion set forth in *Marien I* and then supplement that discussion to reflect matters occurring after remand of that case.

3    The FAC also alleged two causes of action for intentional interference with prospective economic advantage, one cause of action for intentional

2

alleged that the TPG is located within the City of San Diego's Torrey Pines City Park and is used as a launching and landing space for hang gliding and paragliding. Marien first became acquainted with Kuczewski over seven years earlier when David Jebb, Gabriel Jebb's father, was the principal shareholder of ACA, which held the lease and concession for the TPG. The TPG concessionaire is responsible for, inter alia, acting as the flight director for hang gliding and paragliding activities on the premises. While David Jebb was ACA's principal shareholder, Kuczewski, for unknown reasons, routinely screamed at, and/or otherwise harassed, David Jebb, his family, ACA employees, and ACA students in the restricted area of the TPG where pilots and tandem passengers were actively engaged in hang gliding or paragliding. As a result, David Jebb banned him from the TPG.

In or about 2008, Marien became the principal shareholder of ACA and lifted Kuczewski's ban from the TPG. Gabriel Jebb (Jebb) is an employee of ACA and works at the TPG as a tandem instructor. Kuczewski resumed and elevated his vitriolic conduct by confronting and harassing ACA employees and customers and making video recordings of Marien, Jebb, and other ACA employees while they performed their job duties. He posted those video recordings, which purportedly show ordinance or rule violations, on various websites, including one (i.e., www.ushawks.org) that he apparently originated and controls. He also posted on various websites video recordings of his statements made before the City of San Diego City Council meetings

---

infliction of emotional distress, one cause of action for negligent infliction of emotional distress, one cause of action for declaratory relief, and one cause of action for injunctive relief.

3

criticizing Plaintiffs and their management of the TPG.[4] The FAC alleged that Kuczewski sought to convince the City Council to reinstate an advisory board to provide oversight of Plaintiffs and the TPG, which board he presumably would control, and thereby he would control the TPG's flight operations and ACA's business. It also alleged Kuczewski solicited financing to take over the TPG concession when the City of San Diego issues another request for proposal to bid for that concession, thereby showing his true motivation is to take the TPG concession away from ACA. The FAC alleged the ultimate goal of Kuczewski's defamatory statements and other actions was to damage Plaintiffs, cause the City of San Diego to remove ACA as the TPG's concessionaire, and obtain the TPG concession for himself and/or his hang gliding club (i.e., U.S. Hawks).

The FAC described a November 9, 2014, incident during which Kuczewski yelled at Jebb for not wearing a helmet to "kite" while instructing students.[5] Kuczewski refused Jebb's request that he move out of the TPG's restricted area to ensure the safety of the hang gliders and paragliders then using that area. Plaintiffs then called the police to have Kuczewski arrested for trespassing and removed from the premises. Also, on or about November 9, 2014, ACA and Marien revoked Kuczewski's privileges to fly at, and otherwise use the facilities of, the TPG for a period of one year.

---

[4] The FAC stated that Plaintiffs do not seek to impose liability on Kuczewski for defamation or other torts based on his statements at City Council meetings, but instead on his subsequent posting on websites of video recordings of those statements, along with other video recordings and statements that did not originate at City Council meetings.

[5] According to the FAC, "kiting" is a maneuver during which a paraglider is inflated with air but does not leave the ground.

4

The predominant theme of the FAC's allegations was that Kuczewski made defamatory statements asserting that Plaintiffs bullied people at the TPG, although the exact nature or circumstances of such alleged bullying was oftentimes unclear in the FAC.[6] Kuczewski's other alleged defamatory statements included assertions that Plaintiffs are thugs and corrupt, and may be responsible, in part, for the suicide of a woman who had been bullied at the TPG.

Kuczewski filed a motion to strike the FAC pursuant to section 425.16, arguing that each of the FAC's causes of action arose from his exercise of his right to free speech, his statements concerned public issues, and Plaintiffs could not show a probability they would prevail on the merits of the case. Plaintiffs opposed the motion, arguing Kuczewski had not shown their causes of action arose out of his exercise of his right to free speech in connection with a public issue (i.e., § 425.16 protected conduct) and, in any event, they showed there was a probability they would prevail on the merits of each of the FAC's causes of action.

On January 8, 2016, the trial court issued a minute order denying Kuczewski's section 425.16 motion to strike the FAC, stating:

> "Assuming that the allegations fall within protected activity under . . . [section] 425.16[, subd.] (e) as [Kuczewski] avers, the Court finds that [P]laintiffs have . . . established [a] probability of prevailing on the claims. [Citation.] The allegations in this case are not based upon publications made while [Kuczewski] appeal[ed] [to] the City Council[.] Instead, the allegations are based upon internet and other publications of factual assertions

---

[6] For example, on one video recording that Kuczewski posted on a website, he spoke to the City Council regarding one incident at the TPG during which he "thought about all the times that David Jebb and Gabe Jebb and Robin Marien had bullied people and threatened them with arrest."

involving [Kuczewski]. . . . The evidence shows that [Kuczewski] made allegations of fact that [P]laintiffs assert are false. [Citation.] . . . ."

Kuczewski appealed the order denying his section 425.16 motion.

In *Marien I*, we affirmed the order denying Kuczewski's section 425.16 motion to strike, concluding, inter alia, that none of the 33 causes of action alleged in the FAC arose out of any statements or other conduct in connection with any public issue or issue of public interest within the meaning of section 425.16, subdivision (e)(3) or (4).[7] (*Marien I*, *supra*, at pp. 15-21, 29.)

On remand after *Marien I*, Plaintiffs filed the SAC, which added Holland as a defendant in place of a Doe defendant on 32 of its 33 causes of action, which remained substantially the same as in the FAC. The factual allegations specifically made regarding Holland are primarily set forth in paragraph 7 of the SAC, which alleges:

> "7. HOLLAND has at the direction and special insistence of [Kuczewski], or with his permission or acquiescence, or both, caused to be posted to the Internet, as more fully set forth below, several videos of [Kuczewski] making statements about the [Plaintiffs], and each of them, that he and HOLLAND knew, or had reason to know, were false and injurious to [Plaintiffs'] reputations and business. HOLLAND has, acting in concert with [Kuczewski], caused to be published these defamatory statements with the intent of interfering with the business of [Plaintiffs], and each of them, or in reckless disregard of the knowledge that publication of such statements would interfere with [Plaintiffs'] businesses and cause them economic harm and emotional distress. HOLLAND often identifies herself on the Internet as 'Majiemae.' "

---

7    We also concluded that Kuczewski had not alternatively shown his alleged false statements were protected activity under section 425.16, subdivision (e)(1) or (2). (*Marien I*, *supra*, at pp. 19-20.)

Holland filed a section 425.16 motion to strike the SAC, arguing that each of the 32 causes of action alleged against her arose from the exercise of her right to free speech, her statements concerned public issues, and Plaintiffs could not show a probability they would prevail on the merits of the case. Plaintiffs opposed her anti-SLAPP motion, arguing that none of the false statements alleged in the SAC were protected activity under section 425.16, subdivision (e).

On February 21, 2020, the court issued a minute order denying Holland's anti-SLAPP motion, stating in part: "The Court of Appeal, in Case No. D069836, in the context of Kuczewski's claimed protection under the Anti-SLAPP law, ruled that the activity alleged [in the FAC] was not protected activity [under section 425.16, subdivision (e)]." Although the court rejected Plaintiffs' argument that the doctrine of collateral estoppel applied to bar Holland from relitigating our decision in *Marien I,* it nevertheless found our reasoning in *Marien I* persuasive and concluded that none of the false statements alleged in the SAC were protected activity under section 425.16, subdivision (e).

Holland timely filed a notice of appeal challenging the order.

DISCUSSION

I

*Anti-SLAPP Motions Generally*

A SLAPP "is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so. ' "While SLAPP suits masquerade as ordinary lawsuits such as defamation and interference with prospective economic advantage, they are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by the threat of severe economic sanctions against the

7

defendant, and not to vindicate a legally cognizable right." ' " (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21.) Section 425.16, the anti-SLAPP statute, "was enacted in 1992 for the purpose of providing an efficient procedural mechanism to obtain an early and inexpensive dismissal of nonmeritorious claims 'arising from any act' of the defendant 'in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . .' (§ 425.16, subd. (b)(1).)" (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 186.)

> Section 425.16, subdivision (b)(1) provides:

> "A cause of action against a person arising from any act of
> that person in furtherance of the person's right of petition
> or free speech under the United States Constitution or the
> California Constitution *in connection with a public issue*
> shall be subject to a special motion to strike, unless the
> court determines that the plaintiff has established that
> there is a probability that the plaintiff will prevail on the
> claim." (Italics added.)

A two-step process applies in deciding an anti-SLAPP motion. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).) "Only a cause of action that satisfies *both* prongs of the anti-

8

SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

Under the first step, the defendant has the initial burden to show that the claims arose from his or her protected activity. (*Equilon*, *supra*, 29 Cal.4th at p. 67.) In deciding whether the defendant has met that burden, a court considers "whether the plaintiff's cause of action itself was *based on an act in furtherance of* the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, italics added.) The court's focus is not the form of the cause of action or claim, "but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier*, *supra*, 29 Cal.4th at p. 92.) "The Legislature spelled out the kinds of activity it meant to protect in section 425.16, subdivision (e): 'As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' " (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422 (*City of Montebello*).)

9

"Because of these specifications, courts determining whether a cause of action arises from protected activity are not required to wrestle with difficult questions of constitutional law, including distinctions between federal and state protection of free expression. 'The only means specified in section 425.16 by which a moving defendant can satisfy the requirement is to demonstrate that the defendant's conduct . . . falls within one of the four categories described in subdivision (e), defining subdivision (b)'s phrase, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue." ' " (*City of Montebello*, *supra*, 1 Cal.5th at p. 422.) Thus, "courts determining whether conduct is protected under the anti-SLAPP statute look not to First Amendment law, but to the statutory definitions in section 425.16, subdivision (e)." (*Ibid*.)

The California Supreme Court recently clarified the applicability of the anti-SLAPP statute to mixed causes of action. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 392-396 (*Baral*).) *Baral* stated: "[A]n anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded." (*Id*. at p. 393.) Accordingly, "courts may rule on plaintiffs' specific claims of protected activity, rather than reward artful pleading by ignoring such claims if they are mixed with assertions of unprotected activity." (*Ibid*.) Construing the anti-SLAPP statute's use of the term "cause of action" to mean a claim arising from protected activity, *Baral* stated:

> "When the Legislature declared that a 'cause of action' arising from activity furthering the rights of petition or free speech may be stricken unless the plaintiff establishes a probability of prevailing, it had in mind *allegations of protected activity that are asserted as grounds for relief*. The targeted claim must amount to a 'cause of action' in the sense that it is alleged to justify a remedy. By referring to a 'cause of action against a person arising from *any act* of

10

that person in furtherance of" the protected rights of petition and speech, the Legislature indicated that *particular* alleged acts giving rise to a claim for relief may be the object of an anti-SLAPP motion. (§ 425.16, subd. (b)(1) . . . .) Thus, in cases involving allegations of both protected and unprotected activity, the plaintiff is required to establish a probability of prevailing on any claim for relief based on allegations of protected activity. Unless the plaintiff can do so, the claim and its corresponding allegations must be stricken." (*Baral*, *supra*, 1 Cal.5th at p. 395.)

"To avoid confusion," *Baral* referred to "the proper subject of a special motion to strike as a 'claim,' a term that also appears in section 425.16[, subd.] (b)(1)." (*Baral*, *supra*, 1 Cal.5th at p. 382.)

*Baral* also clarified, however, that "[a]ssertions [involving protected conduct] that are 'merely incidental' or 'collateral' are not subject to section 425.16." (*Baral*, *supra*, 1 Cal.5th at p. 394.) In discussing protected acts that are incidental to the plaintiff's claims for relief, *Baral* cited *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, in which the court stated at page 1183: "For purposes of anti-SLAPP analysis, . . . an alleged act is incidental to a claim, and incidental to any unprotected activity on which the claim is based, only if the act is not alleged to be the basis for liability." (*Baral*, at p. 394.) *Wallace*, in turn, cited *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, at pages 414 to 417, in which the court concluded that the defendant's advertising conduct was merely incidental to its manufacturing and sales conduct that was the basis for plaintiff's claims for relief. (*Wallace*, at p. 1183; see also *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 [protected conduct that is merely incidental to unprotected conduct is not subject to anti-SLAPP statute]; *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102

11

Cal.App.4th 1388, 1399 [anti-SLAPP statute does not apply when defendant's alleged protected conduct is merely evidence supporting plaintiff's claims for relief and does not constitute the alleged wrongful conduct itself].) *Baral* further noted that "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral*, at p. 394.) Thus, at the first step of the anti-SLAPP analysis, a court determines whether a complaint's allegations of protected conduct are the basis for a claim for relief or, instead, are incidental or collateral to, or merely provide context for, a claim for relief based on unprotected conduct.

On appeal from an order denying an anti-SLAPP motion, "[w]e independently review the record to determine whether the asserted causes of action arise from the defendant's free speech or petitioning activity, and, if so, whether the plaintiff has shown a probability of prevailing." (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1306.)

II

*Denial of Holland's Section 425.16 Motion to Strike the SAC*

Holland contends the trial court erred by denying her section 425.16 motion to strike the SAC. She asserts she met her burden under the first step of the anti-SLAPP analysis to show the SAC's causes of action arose out of conduct protected by section 425.16 and Plaintiffs did not meet their burden under the second step to show there was a probability they would prevail on the merits of those causes of action. In particular, she asserts the alleged defamatory statements and other alleged actions were made in

12

connection with a public issue or an issue of public interest within the meaning of section 425.16, subdivision (e)(3) or (4).[8]

## A. *Collateral Estoppel Does Not Apply*

In their respondents' brief, Plaintiffs argue that we should apply the doctrine of collateral estoppel and conclude she is bound by our decision in *Marien I* because she is in privity with Kuczewski. The doctrine of collateral estoppel "precludes relitigation of issues argued and decided in prior proceedings." (*Teitelbaum Furs, Inc. v. Dominion Ins. Co.* (1962) 58 Cal.2d 601, 604.) In *Lucido v. Superior Court* (1990) 51 Cal.3d 335, the court set forth five requirements for application of the doctrine of collateral estoppel, stating: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in

---

[8] On December 30, 2020, Holland filed a motion to augment the record with copies of four "screenshots" from websites that Kuczewski, acting in pro per, offered on her behalf in the trial court, but were not filed or lodged with the court. On January 19, 2021, we issued an order stating that we would consider Holland's motion to augment concurrently with this appeal. Because those documents were not filed or lodged with the trial court, they were not made part of the trial court record and we therefore deny her motion to augment the record. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

On February 19, 2021, Plaintiffs filed a motion requesting that we take judicial notice of two exhibits, namely Exhibits A and B. Exhibit A is a highlighted copy of Holland's opening brief and Exhibit B is a copy of Kuczewski's opening brief that was submitted in *Marien I.* On March 11, 2021, we issued an order stating that we would consider Plaintiffs' request for judicial notice concurrently with this appeal. We now exercise our discretion and deny Plaintiffs' request for judicial notice of the two exhibits and therefore disregard any references to them in their respondents' brief. (Cf. Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

13

the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  [Citations.]" (*Id.* at p. 341.)

Assuming arguendo that *Lucido*'s first four requirements for application of the doctrine of collateral estoppel have been satisfied, we nevertheless conclude, as did the trial court *post*, that Plaintiffs have not carried their burden to show that Holland is in privity with Kuczewski.  "The concept of privity for the purposes of res judicata or collateral estoppel refers 'to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of collateral estoppel.  [Citations.]' " (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1069-1070 (*Citizens for Open Access*).)  "A party is adequately represented for purposes of the privity rule 'if his or her interests are so similar to a party's interest that the latter was the former's virtual representative in the earlier action.' " (*Id.* at p. 1070) "We measure the adequacy of 'representation by inference, examining whether the . . . party in the suit which is asserted to have a preclusive effect had the same interest as the party to be precluded, and whether that . . . party had a strong motive to assert that interest.' " (*Id.* at p. 1071.)

Contrary to Plaintiffs' implicit assertion, the fact that Holland's opening brief, filed in propria persona, repeated (or, in Plaintiffs' terminology, "appropriated") many of the arguments previously made by Kuczewski's appellate counsel in his opening brief in *Marien I* does not show they had a mutual, or sufficiently close, relationship such that Kuczewski represented

14

Holland's legal rights or interests in *Marien I*. (*Citizens for Open Access*, *supra*, 60 Cal.App.4th at pp. 1069-1070.) Furthermore, contrary to Plaintiffs' assertion, any representation by Holland's trial counsel that Kuczewski and Holland were engaged in a joint defense does not show that Kuczewski represented Holland's interests in *Marien I*. In particular, assuming arguendo that Kuczewski and Holland are jointly defending the SAC, Holland was not added as a defendant until after remand of *Marien I* and, in any event, the fact that codefendants may collaborate in their defense of an action does not show they have a sufficiently close relationship for purposes of applying the doctrine of collateral estoppel. Plaintiffs do not cite, and we are unaware of, any apposite case supporting their argument. Because Plaintiffs have not carried their burden to show that Holland is in privity with Kuczewski, we conclude the doctrine of collateral estoppel does not apply to bar Holland from purportedly "relitigating" issues that we decided in *Marien I*.

### B. *Issue of Public Interest Generally*

Section 425.16, subdivision (e)(3) and (4) define acts made "in connection with a public issue" that are protected by the anti-SLAPP statute as including statements made in connection with "an issue of public interest." "The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479.) "Although matters of public interest include legislative and governmental activities, they may also include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives

15

of many individuals." (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 650.)

Section 425.16 "does not provide a definition for 'an issue of public interest,' and it is doubtful an all-encompassing definition could be provided. However, the statute requires that there be some attributes of the issue which make it one of public, rather than merely private, interest. A few guiding principles may be derived from decisional authorities. First, 'public interest' does not equate with mere curiosity. [Citations.] Second, a matter of public interest should be something of concern to a substantial number of people. [Citation.] Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. [Citations.] Third, there should be some degree of closeness between the challenged statements and the asserted public interest [citation]; the assertion of a broad and amorphous public interest is not sufficient [citation]. Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort 'to gather ammunition for another round of [private] controversy . . . .' [Citation.] Finally, 'those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.' [Citation.] A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people." (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132-1133.)

Cases that have addressed the question of whether alleged wrongful statements were made in connection with a public issue or an issue of public interest have focused on whether those statements "either concerned a person or entity in the public eye [citations], conduct that could directly affect a large number of people beyond the direct participants [citations] or a topic of widespread, public interest [citation]." (*Rivero v. American Federation of*

16

*State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924 (*Rivero*).) On the latter factor, "it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898.) For example, comments on the business practices of a plaintiff that is not in the public eye and do not affect a large number of people are not a topic of widespread public interest. (*Ibid*.) However, consumer information that affects a large number of persons is generally viewed as information concerning a matter of public interest. (*Ibid*.)

Furthermore, "in order to satisfy the public issue/issue of public interest requirement of section 425.16, subdivision (e)(3) and (4) of the anti-SLAPP statute, in cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." (*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119, fn. omitted.)

C. *No Public Issue or Issue of Public Interest in This Case*

Contrary to Holland's assertion, we conclude none of the 32 causes of action alleged against her in the SAC arise out of any statements or other conduct in connection with any public issue or issue of public interest within the meaning of section 425.16, subdivision (e)(3) or (4). Without specifically addressing the allegations in each of the 32 causes of action alleged against Holland in the 110-page SAC, we conclude that, to the extent the SAC's causes of action are based on Kuczewski's and/or Holland's statements about

17

Plaintiffs (e.g., defamation causes of action), those statements involved, at most, a private controversy or dispute between Plaintiffs and Kuczewski and/or Holland and not any public issue or issue of public interest.[9] First, none of the Plaintiffs were in the public eye. (*Rivero*, *supra*, 105 Cal.App.4th at p. 924.) Neither the fact that ACA was the TPG's concessionaire nor the fact that Marien acted as its flight director made Plaintiffs public figures or otherwise placed them in the public eye and Kuczewski's and Holland's website postings alone could not place them in the public eye for anti-SLAPP purposes. (*Weinberg*, *supra*, 110 Cal.App.4th at p. 1133 [defendants cannot, by their own conduct, create their own defense to defamation causes of action by making plaintiff a public figure].)

Second, the SAC's allegations do not support Holland's apparent assertion that her alleged wrongful statements directly affected a large number of people beyond the direct participants. (*Rivero*, *supra*, 105 Cal.App.4th at p. 924.) Rather, because her statements related primarily to, or arose out of, incidents involving Plaintiffs and Kuczewski and/or a few of his hang gliding acquaintances, they did not directly affect a large number of people. Although Holland's website postings of Kuczewski's statements presumably made them potentially accessible by a large number of people, that potential accessibility does not, by itself, show those statements directly affected a large number of people. (*Weinberg*, *supra*, 110 Cal.App.4th at

---

9      We note that the SAC's declaratory relief and injunctive relief causes of action do not involve any speech or other purported protected conduct by Kuczewski or Holland, thereby clearly precluding her satisfaction of the first step of the anti-SLAPP analysis without our need to address whether they involved an issue of public interest.

18

p. 1133 [defendants cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people].) The SAC does not allege that Holland's website statements were viewed by thousands of persons or that such statements directly affected those viewers. "[A] matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest." (*Id*. at p. 1132.) In this case, there is nothing alleged in the SAC showing Kuczewski's and/or Holland's dispute with Plaintiffs regarding their operation of the TPG was a matter of concern to persons other than Kuczewski, Holland, and the presumably small number of hang gliders in the U.S. Hawks hang gliding organization and/or those persons directly interested in Kuczewski's and Holland's website postings regarding Plaintiffs. (Cf. *Weinberg*, at pp. 1135-1136 [defendant's publication of defamatory statements accusing plaintiff of criminal conduct to relatively small group of about 700 fellow token collectors was a private matter furthering defendant's campaign to discredit plaintiff and did not involve a matter of public interest].)

Third, contrary to Holland's assertion, her alleged wrongful statements did not involve a topic of widespread, public interest, but instead involved a private controversy or dispute between Plaintiffs and Kuczewski. Although, as she argues, the alleged statements and incidents underlying them relate to Plaintiffs' operation of the TPG, which is part of a public park, and ACA's rent-free lease of the TPG premises from the City of San Diego, those circumstances do not necessarily show those statements involved a topic of widespread, public interest. The alleged statements show Kuczewski and/or Holland are highly critical of the manner in which Plaintiffs operate the TPG. However, there is nothing in the SAC's allegations showing that criticism has become a topic of widespread, public interest. In particular, although

19

Kuczewski regularly spoke at City Council meetings regarding incidents that occurred at the TPG and Plaintiffs' purported mismanagement of its operations and he and/or Holland subsequently posted video recordings of those statements, none of his statements at those meetings apparently were made during the City Council's agenda items, but instead were made during the period for comments by the general public on nonagenda issues. Neither Kuczewski's statements at City Council meetings regarding the operations of the TPG nor his, nor Holland's, subsequent posting of video recordings of those statements made his statements topics of widespread, public interest. (*Rivero*, *supra*, 105 Cal.App.4th at p. 924; *Donovan v. Dan Murphy Foundation* (2012) 204 Cal.App.4th 1500, 1508-1509 [removal of member of foundation's board of directors did not involve an issue of public interest even though foundation was one of largest charitable organizations in Southern California and its donations to persons and entities affected millions of persons].) Furthermore, there is an insufficient degree of closeness between Kuczewski's and/or Holland's alleged defamatory statements and any purported public interest. (*Weinberg*, *supra*, 110 Cal.App.4th at p. 1132.) Based on our reading of the SAC's allegations, the focus of Kuczewski's and/or Holland's alleged statements was to further Kuczewski's private dispute with Plaintiffs and possibly obtain the TPG concession for himself and/or members of his U.S. Hawks organization; it was not to further the public interest. (*Id.* at pp. 1132-1133.) Accordingly, we conclude Kuczewski's alleged defamatory statements, as allegedly posted on websites by Holland, were mere comments and/or criticism of Plaintiffs' operation of the TPG and other business practices, which statements arose out of a private controversy or dispute or private interest and were not made in connection with any public issue or issue of public interest. (Cf. *Wilbanks*, *supra*, 121 Cal.App.4th

20

at p. 898 [defendant's comments on plaintiffs' business practices did not affect a large number of people and was not a topic of widespread public interest].)

To the extent Holland asserts that some of Kuczewski's alleged statements, as allegedly posted on websites by Holland, were made in connection with issues of public interest because they constituted consumer information affecting a large number of people, we conclude the premise of that assertion is faulty. Although Kuczewski allegedly made statements, inter alia, referring to Plaintiffs' bullying of people at the TPG and various accidents occurring there, any consumer information conveyed by those statements was insignificant and merely incidental to the underlying private purpose of those statements as alleged in the SAC (i.e., to further Kuczewski's private dispute with Plaintiffs and/or to obtain the concession for the TPG for himself and/or members of his U.S. Hawks organization). To the extent the SAC alleged Kuczewski made any statements conveying consumer information that were later posted on websites by Holland, those purported protected statements were merely incidental or collateral to Plaintiffs' claims for relief based on Kuczewski's and Holland's statements and other conduct that was not protected by section 425.16. (Cf. *Baral*, *supra*, 1 Cal.5th at p. 394 [assertions involving protected conduct that are merely incidental or collateral are not subject to § 425.16].)

D. *No Issue Under Consideration by a Legislative Body in This Case*

We also reject Holland's alternative assertion that Kuczewski's alleged defamatory statements, which she allegedly later posted on websites, were made "before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" within the meaning of section 425.16, subdivision (e)(1), or "in connection with an issue under consideration or

21

review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" within the meaning of section 425.16, subdivision (e)(2). Although many of Kuczewski's alleged defamatory statements were made during the nonagenda public comment portion of city council meetings, the SAC clearly alleged that Plaintiffs do not base their claims for relief on his speech or other conduct during city council meetings, but rather on Kuczewski's and Holland's conduct thereafter (e.g., posting those statements on websites after city council meetings).[10] Holland does not cite, and we are unaware of, any case that holds defamatory statements are forever protected by the anti-SLAPP statute if they are initially made before a legislative body (e.g., city council) and thereafter repeated, or "re-published," by their declarants, or other persons, to people outside of a legislative or other official proceeding (e.g., on websites). Because we cannot conclude the Legislature intended section 425.16 to apply in that manner, we reject Holland's apparent assertion to that section 425.16, subdivision (e)(1) or (2) applies to protect her alleged defamatory statements.

Because Holland did not carry her burden under the first step of the anti-SLAPP analysis to show the SAC's causes of action arose out of conduct protected by section 425.16, we need not, and do not, address the question of

---

[10] In paragraph 31 of the SAC, which by subsequent incorporation applied to all of the causes of action alleged therein, Plaintiffs alleged: "For purposes of clarity, Plaintiffs do not seek to impose liability for defamation or interference-related statements [Kuczewski] [made] while he [was] standing in front of the City Council; rather[,] Plaintiffs seek [to impose] liability against Defendants [i.e., Kuczewski and Holland] for the broadcast of those statements on television, on the Internet, and in person-to-person conversations because they are neither matters of genuine public concern and not subject to any privilege when broadcast in such a manner." (Emphasis omitted.)

whether Plaintiffs met their burden under the second step of the anti-SLAPP analysis (i.e., to show there is a probability they will prevail on the merits of their causes of action). Accordingly, the trial court correctly denied Holland's section 425.16 motion to strike the SAC.

## DISPOSITION

The order is affirmed. Respondents shall recover their costs on appeal.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

23